*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 06a0424p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

SAMI K. BERRI; TINA ORHAM BERRI,
     *Petitioners-Appellants,*

  *v.*

No. 05-4045

ALBERTO R. GONZALES, Attorney General,
     *Respondent-Appellee.*

On Petition for Review of an Order
of the Board of Immigration Appeals.
Nos. A29 608 462; A72 171 992.

Argued: October 25, 2006

Decided and Filed: November 16, 2006

Before: MARTIN and COOK, Circuit Judges; TARNOW, District Judge.[*]

_____

## COUNSEL

**ARGUED:** David H. Paruch, LAW OFFICES OF DAVID H. PARUCH, Troy, Michigan, for Petitioners. William J. Kopp, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for Respondent. **ON BRIEF:** David H. Paruch, LAW OFFICES OF DAVID H. PARUCH, Troy, Michigan, for Petitioners. William J. Kopp, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for Respondent.

_____

## OPINION

_____

  BOYCE F. MARTIN, JR., Circuit Judge. Husband and wife Sami and Tina Berri, citizens of Lebanon, claim eligibility for asylum, withholding of removal, and relief under the Convention Against Torture. The Immigration Judge (IJ) denied their claims, and a member of the Board of Immigration Appeals (BIA) affirmed without opinion. The Berris appeal the denial of their claims. They also appeal the IJ's denial of their motion for continuance and the BIA's affirmance without opinion. For the following reasons, we **DENY** the Berris' petition for review. We also **AFFIRM** the IJ's denial of a continuance and the BIA's use of its affirmance without opinion procedure.

_____

[*]The Honorable Arthur J. Tarnow, United States District Judge for the Eastern District of Michigan, sitting by designation.

1

I

Petitioner Sami Berri ("Sami") is a native and citizen of Lebanon. His wife, Petitioner Tina Berri ("Tina"), is a native Iraqi and a citizen of Lebanon. In 1970, because he was having financial problems, Sami moved to Kuwait in order to work. In 1979 Sami opened his own business under the sponsorship of a Kuwaiti citizen. Sami held a work permit which only allowed him to remain for five years, but Sami continually renewed the permit.

Sami and Tina met in Kuwait, and married in 1978. During his testimony before the IJ, Sami first stated that because he was Shiite Muslim and she was a Syrian Christian, they could not marry in Kuwait, but rather, had to elope to Lebanon. However, when later questioned by the IJ, Sami stated that they were in fact legally married in Kuwait. Tina testified that she had to feign converting to Islam in order to get married. In 1979, Tina gave birth to a daughter, Saly.

According to the Berris, their problems began in Kuwait. Sami testified that in 1988, while going home from work on his lunch break, Kuwaiti security forces arrested him because they believed he was a member of Amal,[1] a group believed to be working to overthrow the Kuwaiti government. For nineteen days, Sami was incarcerated in a small room and treated harshly. Sami and Tina both testified that during this period, he was not allowed to have visitors, although in his asylum application Sami stated that Tina visited him while he was captive.

After his confinement, Sami was transferred to a hospital where he was force-fed, and then moved to a detention camp with 300 other individuals for one or two weeks. With the permission of Kuwaiti Government officials, the Berri family was allowed to leave Kuwait and return to Lebanon. Sami testified that he had to leave everything behind in Kuwait, although in fact, he already had an apartment in Beirut. The Berris returned to Lebanon while the country was in the midst of a civil war, and their apartment was located on the so-called "green line" between the East and West Beirut, where Hezbollah militias maintained checkpoints.

Sami's testimony regarding the Hezbollah militia's treatment of him varies. He testified that on the first day he arrived at his apartment, militia members accused him of being an Amal member (on the basis of his surname) sent to spy on them, and demanded that Sami give them money to support the militia. Sami initially testified that he was never arrested or detained and left Beirut after the militia threatened him two times, but later testified that the militia was living in the same building as his family and came to his apartment up to ten times a day. He also testified that the militia had taken him to a detention room where he was threatened, kicked, slapped, pushed and beaten to the point that he bled.

The Berris also alleged that the militia was responsible for bombing their car and apartment, although outside of their testimony, they provided no evidence of this happening. With respect to the car, Sami testified that it was blown up during the daytime while they were away from the house. However, Tina testified that their car was bombed in the middle of the night while the family was sleeping upstairs above the building's garage. In order to escape the Hezbollah militia, the family sometimes stayed with friends in the suburbs of Beirut. Tina testified that despite being terrified while in Beirut, they were safe at their friends' home.

In June 1988, the Berris went to the United States in order to escape these threats. Using his business contacts in the United States, Sami obtained a non-immigrant visa for business. Tina entered the United States as a non-immigrant visitor for pleasure. Sami reentered Lebanon after that for the purpose of transferring money he had in Lebanese bank accounts. According to stamps on

---

[1]The Berris share the same last name as Nabi Berri, leader of the Amal party. According to Sami, as far as he knows, they are of no relation to one another.

his passport and his testimony, it appears that he went back to Lebanon from the United States on July 29, 1988, then went to Syria and reentered Lebanon in early August, and then came again to Lebanon from the United States in October 1988. His final entry into the United States was in November 1988. During his travels to Lebanon, he did not go back to the same area of Beirut that he lived in, and was able to enter and leave unharmed.

This case was commenced on November 16, 1999, when the INS issued Notices to Appear to the Berris for remaining in the United States longer than permitted under their non-immigrant visas. After a series of postponements, the case went before the IJ on January 20, 2004. The Berris had obtained new counsel less than two weeks prior to the hearing date, and filed an untimely motion for continuance. The IJ refused to grant a continuance. The IJ granted their request for voluntary departure, but denied their claims to asylum, withholding of removal, and for relief under the Convention Against Torture.

On August 2, 2005, a member of the Board of Immigration Appeals affirmed the IJ's decision without opinion. The Berris filed this timely appeal.

## II

We review an IJ's denial of a continuance for abuse of discretion. *Abu-Khaliel v. Gonzales*, 436 F.3d 627, 634 (6th Cir. 2006). The Berris' case has been pending since 1999. Due to a combination of their requests and rescheduling for priority cases, their hearing was postponed several times. One to two weeks before their January 2004 hearing was scheduled, the Berris obtained new counsel to represent them. Seven days before the hearing, counsel filed a motion for continuance with the court for the purpose of reviewing the record more thoroughly, speaking with the Berris, and retaining an expert witness. The Berris concede that their motion was untimely.

Even if a motion is untimely, an IJ may grant a motion for continuance if good cause is shown. 8 C.F.R. §1003.29. The Berris contend that they have shown good cause, and allege that the IJ was more concerned with the fact the docket was booked until 2005, and that the IJ simply did not want the Berris to receive the benefit of further delay.

We agree with the IJ that the Berris failed to show good cause. Despite the fact that this case was pending since 1999 and that the hearing date of January 2004 was scheduled nearly two years prior, the Berris did not obtain new counsel until one to two weeks before the hearing date. This delay in hiring new counsel was also inexcusable given the fact that the new attorney was already representing the Berris' daughter in a separate proceeding. Thus, he undoubtedly was familiar with the facts of their case, reducing the risk of ineffective representation.

Therefore, we hold that the IJ's denial of the Berris' motion for continuance was not an abuse of discretion.

## III

We next review the Berris' claims for asylum, withholding of removal, and relief under the Convention Against Torture. Pursuant to 8 U.S.C. § 1252(b)(4)(B), an IJ's "findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." This test is akin to a substantial evidence test. *Yu v. Ashcroft*, 364 F.3d 700, 702 (6th Cir. 2004). We review legal questions involving immigration proceedings *de novo*. *Ali v. Ashcroft*, 366 F.3d 407, 409 (6th Cir. 2004). When the BIA adopts the IJ's reasoning, we review the IJ's decision in order to determine whether there was an abuse of discretion. "An abuse of discretion can be shown when the IJ or Board offers no 'rational explanation, inexplicably departs from established policies, or rests on an impermissible basis such as invidious discrimination against a particular race or group.'"

*Denko v. INS,* 351 F.3d 717, 723 (6th Cir. 2003) (quoting *Balani v. INS*, 669 F.2d 1157, 1161 (6th Cir. 1982)).

### a. The IJ's Credibility Determination

The Berris, noting that several years have passed between the events and their trial, contend that despite "minor and irrelevant" inconsistencies, their "core testimony was clear." Appellant's Br. at 16. We disagree, and find that there are sufficient inconsistencies to support the IJ's finding.

Sami initially said in his application that he was allowed to have visitors while imprisoned in Kuwait, yet later said he was not allowed to receive visitors. In addition, Sami's testimony regarding the number of times he was questioned by Hezbollah, whether he was arrested, and whether he was beaten, varies greatly. Further, Sami and Tina's testimony with respect to when their car was bombed differs significantly. Undoubtedly, these are the kinds of traumatic events that an individual may forget the exact details of; at the same time, however, these are significant and likely memorable events. Such a wide discrepancy in testimony, particularly in the course of one trial, demonstrates that there was substantial evidence supporting the IJ's adverse credibility finding. And such changes in testimony concern not only traumatic events. For example, Sami even misstated the country in which he married Tina.

Some inconsistencies, such as the circumstances of Sami's treatment in Kuwait (which, of course, has no bearing on whether he should be returned to Lebanon), and the statement that they left Kuwait with nothing even though they had an apartment in Lebanon, are arguably minor or irrelevant. However, it is "their cumulative effect" that lends support to the IJ's adverse credibility finding. *Yu*, 364 F.3d at 704.

We hold that given the number of inconsistencies and the lack of corroborating evidence to support the Berris' statements, the IJ's credibility determination was a reasonable one, and we are inclined to follow it.

### b. Asylum

The Attorney General has the discretionary authority to grant asylum to an alien who qualifies as a "refugee." 8 U.S.C. § 1158(b)(1). It is the applicant's burden of proof to establish that he qualifies for refugee status. He must demonstrate that he suffered past persecution or has a well-founded fear of future persecution on the basis of his "race, religion, nationality, membership in a particular social group, or political opinion." *Koliada v. INS*, 259 F.3d 482, 486-87 (6th Cir. 2001) (quoting 8 U.S.C. § 1101(a)(42)(A)) .

If an applicant establishes that he has suffered past persecution, there is a rebuttable presumption that he has a well-founded fear of future persecution. 8 C.F.R. § 208.13(b)(1); *Ali*, 366 F.3d at 410*.* This presumption may be rebutted by the government if it establishes, by a preponderance of the evidence, that the circumstances in the applicant's country have since changed. *Rreshpja v. Gonzales*, 420 F.3d 551, 555 (6th Cir. 2005).

Whether an applicant establishes a well-founded fear of future persecution is measured by a subjective and an objective standard. *Id*. To satisfy the subjective standard, the applicant must have a genuine fear of persecution. *Id*. With respect to the objective standard, the applicant must demonstrate that a reasonable person in the same circumstances would fear returning to his country based on account of one of the five protected grounds. *Id*.

Even if an alien qualifies as a refugee under statutory criteria, the IJ may still exercise discretionary authority in determining whether to grant asylum. *Yu*, 364 F.3d at 702. "The

discretionary judgment to grant asylum to a refugee is 'conclusive unless manifestly contrary to law and an abuse of discretion.'" *Id*. at 703 (quoting 8 U.S.C. § 1252(b)(4)(D)).

The Berris base their claims that they will be persecuted upon return to Lebanon on two grounds: (1) their intermarriage, and (2) imputed political belief based upon their surname, which they share with the leader of Amal.

Assuming *arguendo* that intermarriage qualifies under the Act, the Berris have failed to put forth any evidence demonstrating past persecution on account of their marriage. Further, they have failed to demonstrate that they have a well-founded fear of future persecution. According to the State Department's International Religious Freedom Report of 2003, which the IJ relied upon, citizens of Lebanon are generally free to practice the religion of their choice, and "[m]any families have relatives who belong to different religious communities and intermarriage is not uncommon."[2] The Berris have offered absolutely no evidence to the contrary.

With respect to the Berris' claim of imputed political belief based on their surname, they have presented no evidence beyond their inconsistent testimony in order to demonstrate past persecution. As an initial matter, anything that happened in Kuwait is irrelevant to this proceeding because the Berris are to be sent back to Lebanon, not Kuwait. As for their experience in Lebanon, even if we were to believe that they suffered persecution in the past, the Berris have no reasonable basis for fearing persecution upon their return. Sami's father, who shares the Berri last name, has remained in Lebanon free from persecution. In addition, letters from the Department of State in 1999 relating to other applicants explain that all sectarian militias other than Hezbollah, including Amal's militant wing, have been disarmed, and that the "green line" separating East and West Beirut during the civil war no longer exists.[3] In sum, any evidence of past persecution that Lebanese officials inflicted upon the Berris is rebutted by the change in circumstances since 1988.

Even if we were to find that the Berris have a well-founded fear of persecution if they return to where they lived in Beirut, the Berris have not shown that they fear persecution in *all* parts of Lebanon. In order to prevail, the Berris must show that they have a well-founded fear of persecution throughout the *entire* country. 8 C.F.R. § 208.13(b)(2)(ii); *In re C-A-L*, 21 I&N Dec. 754, 757 (BIA 1997) ("This Board has found that an alien seeking to meet the definition of a refugee must do more than show a well-founded fear of persecution in a particular place within a country. He must show that the threat of persecution exists for him country-wide."). Tina testified that they were safe in the suburbs of Beirut. In addition, Sami was able to safely reenter and depart from Lebanon in 1988, during a civil war, without being harmed.

We find that the Berris have not established past persecution or a well-founded fear of future persecution.

### c. Withholding of Removal

An alien may not be removed to a country if "the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social

---

[2] The 2006 Religious Freedom Report, which contains the same findings, is available at http://www.state.gov/g/drl/rls/irf/2006/71426.htm.

[3] Additionally, we note that in 2005, Amal and the political wing of Hezbollah formed an alliance — the Resistance and Development Bloc — which won control of 35 Parliament seats. Henry Srebrnik, *Whose fault was the Qana tragedy?*, NATIONAL POST (F/K/A THE FINANCIAL POST), August 1, 2006, at A13. In fact, the current speaker of parliament is Nabi Berri, the Amal leader with whom the Berris share their surname. U.S Department of State, Profile on Lebanon. http://www.state.gov/r/pa/ei/bgn/35833.htm.

group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). Although the IJ may grant withholding of removal based upon the same five grounds as a claim for asylum, the alien's burden of proof is different. An applicant must provide evidence showing a "clear probability" that he or she would be subject to persecution, *Mullai v. Ashcroft*, 385 F.3d 635, 639 (6th Cir. 2004), meaning "that it is more likely than not that the alien would be subject to persecution." *INS v. Stevic*, 467 U.S. 407, 423 (1984). When an applicant "fail[s] to meet the statutory eligibility requirements for asylum, the record necessarily supports the finding that [the applicant does] not meet the more stringent standard of a clear probability of persecution required for withholding of [removal]." *Allabani v. Gonzales*, 402 F.3d 668, 675 (6th Cir. 2005) (citations omitted). Because the Berris fail to meet the requirements for asylum, they necessarily fail to meet the requirements for withholding of removal.

**d. Relief Under the Convention Against Torture**

An applicant seeking relief under the Convention Against Torture has the burden of proving that it is more likely than not that he will be tortured if removed to the proposed country. 8 C.F.R. § 208.16(c)(2). Unlike claims of asylum and withholding of removal, an applicant need not show torture on one of the five statutory grounds; rather,

> [t]orture is defined as any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

8 C.F.R. § 1208.18(a)(2). In deciding whether torture is more likely than not to occur upon the applicant's return to the country, we "consider the possibility of future torture, including any evidence of past torture inflicted upon the applicant and evidence that the applicant is not likely to be tortured in another area of the country of removal." *Ali v. Reno*, 237 F.3d 591, 596-97 (6th Cir. 2001); *see also* 8 C.F.R. § 208.16(c)(3).

The Berris base their Convention Against Torture claim on the same grounds as their requests for asylum and withholding of removal — their intermarriage and their surname. Just as they fail to demonstrate that persecution is more likely than not, they likewise fail to demonstrate that torture is more likely than not. Therefore, we deny relief under the Convention Against Torture.

IV

The Berris also challenge the BIA's affirmance without opinion, arguing that the BIA failed to follow its own procedure, and "[t]he factual and legal errors raised on appeal to the Board are substantial and the cumulative effect of these errors warranted a written decision after review by a three-member panel." Appellant's Br. at 24.

The BIA may issue an affirmance without opinion if certain criteria are met:

> The Board member to whom a case is assigned shall affirm the decision of the Service or the immigration judge, without opinion, if the Board member determines that the result reached in the decision under review was correct; that any errors in the decision under review were harmless or nonmaterial; and that
> (A) The issues on appeal are squarely controlled by existing Board or federal court precedent and do not involve the application of precedent to a novel factual situation; or

       (B) The factual and legal issues raised on appeal are not so substantial that the case warrants the issuance of a written opinion in the case.

8 C.F.R. § 1003.1(e)(4)(i). In *Denko v. INS*, we explained that "a three-member panel on appeal is appropriate only when the BIA needs to establish precedent, the BIA needs to settle differences among IJs, the case is of national importance, the IJ's decision is not in conformity with the law, the IJ makes a clearly erroneous factual determination, or the Board needs to reverse the IJ's decision." 351 F.3d 717, 727 n.6 (6th Cir. 2003).

       We also noted that the BIA member must have given the case his or her full consideration and assessed the decision before he or she reached the conclusion that an affirmance without opinion is appropriate. *Id*. at 729. This is because in order to reach that conclusion, the BIA must have determined that the IJ made the correct decision, any errors are harmless or nonmaterial, any issues raised are controlled by precedent, and that no novel issues are raised or factual and legal issues raised are insubstantial. *Id*. Most relevant to the case at bar is our observation in *Denko* that when the BIA has adopted the IJ's ruling without opinion, appeals courts have simply looked to the IJ's decision as the final agency determination. *Id*. at 728. Therefore, "'it makes no practical difference whether the BIA properly or improperly streamlined review of [the Berris'] case' because . . . 'our ability to conduct a full and fair appraisal of [the Berris'] case is not compromised.'" *Id*. at 732 (quoting *Georgis v. Ashcroft*, 328 F.3d 962, 967 (7th Cir. 2003)).

       The factual and legal issues in this case fit within the boundaries of section 1003.1(e)(4)(i). Further, because we treat the IJ's decision as the final decision and subject it to *de novo* review, the Berris have not lost their opportunity for a meaningful appellate review of their case. *Id*. at 728, 732. Therefore, we hold that the BIA's affirmance without opinion was proper in this case.

V

       For the reasons above, we **DENY** the petition for review.