NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0138n.06
Filed: February 20, 2007

No. 05-4470

## UNITED STATES COURT OF APPEALS
### FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| MAMADOU FALL, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | ON PETITION FOR REVIEW OF AN |
| v. | ) | ORDER OF THE BOARD OF |
| | ) | IMMIGRATION APPEALS |
| ALBERTO GONZALES, Attorney General, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |
| | ) | |

Before: DAUGHTREY and ROGERS, Circuit Judges; OBERDORFER, District Judge.[*]

OBERDORFER, District Judge.

Mamadou Fall petitions for review of the October 21, 2005, order of the Board of Immigration Appeals (BIA), affirming the Immigration Judge's (IJ's) June 7, 2005, denial of his application for asylum, withholding of removal, and relief under the Convention Against Torture (CAT). We assume familiarity with the case's procedural history and background.

Fall is a fifty-two year-old native of Mauritania and a member of the Fulani ethnic group. His wife and children presently live in Senegal. He sends them financial support derived from his wages as a restaurant cook in Columbus, Ohio.

_____

[*]The Honorable Louis F. Oberdorfer, United States District Court for the District of Columbia, sitting by designation.

Fall testified that he entered the U.S. using another person's passport in March 1999. A decade earlier, the government of Mauritania apparently had detained him and confiscated all his land because it believed, incorrectly, that Fall belonged to an anti-government political organization advocating on behalf of his ethnic group, black Fulani. Fall claims that after ten months of brutal interrogation, the government released him to be forcibly deported to Senegal, where he was reunited with his wife and family. In Senegal, the Falls had two other children and struggled economically.

In 1996, Fall was in the employ of a construction worker in Senegal, through whom he met someone who was willing to sell him a Senegalese passport for Fall's personal use. So Fall rented a passport and with it traveled to the U.S., illegally entering the country, he says, in March 1999. He ultimately settled in Columbus, Ohio, to work as a restaurant cook.

In August 1999, Fall applied for asylum, and the former INS commenced removal proceedings. Fall conceded removability in October 2002, but continued to seek asylum relief. On June 7, 2004, Fall appeared before the IJ in Arlington, Virginia, by video conference with counsel who attempted unsuccessfully to quash the video hearing. Following the hearing, the IJ denied Fall's application for asylum, withholding of removal, and relief under the CAT, and ordered him removed to Mauritania. The BIA affirmed that decision, adopting the IJ's determinations while adding that it did not find any violation of due process at Fall's hearing.

## I.    Asylum

Petitioner asserts various claims for relief from the BIA decision. We focus first on whether his asylum application was timely filed. *See* 8 U.S.C. § 1158(a)(2)(B). Relying largely on a credibility determination, the IJ found that petitioner had failed to "establish, by clear and

convincing evidence, that he entered the United States in the manner that he . . . testified"— *i.e.*, petitioner had not shown that he had "filed [his asylum application] within one year [of the date of his entry] by clear and convincing evidence." JA 53. The BIA affirmed this finding. JA 2.

This court has no jurisdiction to review the IJ's determination that petitioner's asylum application was untimely. 8 U.S.C. § 1158(a)(3); *see Castellano-Chacon v. INS*, 341 F.3d 533, 544 (6th Cir. 2003). Petitioner's sole argument regarding timeliness is that the IJ's determination that his "application was untimely is not supported by substantial evidence." Pet. Br. at 18 (emphasis removed). Entertaining such an argument would involve impermissible judicial review of a purely factual determination. *See* 8 U.S.C. § 1158(a)(3); *Castellano-Chacon*, 341 F.3d 543-44; *Xiao Ji Chen v. U.S. Dep't of Justice*, 434 F.3d 144, 153-54 (2d Cir. 2006). Moreover, because petitioner raises no questions of law or constitutional claims, he cannot obtain judicial review under § 1252(a)(2)(D), which only permits review of "constitutional claims or questions of law." *See id.*; *Almuhtaseb v. Gonzales*, 453 F.3d 743, 748 (6th Cir. 2006). Accordingly, we dismiss his petition for review of the denial of his asylum application.

## II. Withholding of Removal and Relief Under the CAT

Petitioner's second and third claims seek withholding of removal and relief under the CAT. They are not subject to the same timeliness considerations as asylum applications, so this court has jurisdiction over those claims. *See* 8 U.S.C. § 1231(b)(3)(A); *Castellano-Chacon*, 341 F.3d at 545-53 (reviewing withholding of removal and CAT requests despite lack of jurisdiction to review timeliness of asylum application).

To qualify for withholding of removal, petitioner must establish that his "life or freedom would be threatened in [the] country [of removal]" on the basis of one of five statutory grounds,

"race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A); *see* 8 C.F.R. § 208.16(b). If petitioner establishes that he "suffered past persecution" on the basis of one such statutory ground, eligibility for withholding is presumed, subject to rebuttal. *Id*. In this regard petitioner must provide evidence showing a "clear probability" that he would be subject to persecution, meaning that "it is more likely than not that the alien would be subject to persecution." *See INS v. Stevic*, 467 U.S. 407, 424 (1984); *Mullai v. Ashcroft*, 385 F.3d 635, 639 (6th Cir. 2004).

Our review of an IJ's determination that petitioner has not proved persecution by a clear probability is necessarily deferential. We cannot disturb that finding "unless *any* reasonable adjudicator would be *compelled* to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B) (emphases added); *see Berri v. Gonzales*, 468 F.3d 390, 395 (6th Cir. 2006). Where, as here, the BIA decision affirming the IJ's decision adopts the IJ's reasoning and factual findings, we may review the decision of the IJ directly, as modified (if at all) by the BIA. *Gilaj v. Gonzales*, 408 F.3d 275, 282-83 (6th Cir. 2005).

Here, the IJ found that petitioner had not proved by a clear probability that he was "subjected to the conditions to which he testified." JA 54. The IJ observed that petitioner had several times testified inconsistently about key aspects of his claim for withholding. Petitioner initially testified that he had been arrested and detained for over ten months by the government of Mauritania while being beaten repeatedly. When later asked about the same event, petitioner said that he had been deported on the same day he was arrested. JA 103-04. Petitioner attempted to explain this discrepancy away by stating that he had not understood the question and thought it was asking about the timing of his wife's deportation. However, just a few moments earlier he

-4-

had stated that he and his wife crossed the border to Senegal on different dates, clearly distinguishing between the dates of his and his wife's crossing. *Id.* The IJ thus found it "highly likely that [petitioner] was never detained." JA 54-55. This finding is not so unreasonable that we are *compelled* to find otherwise. *See* 8 U.S.C. § 1252(b)(4)(B).

In addition to these and other inconsistencies in petitioner's testimony, the IJ noted that in the intervening years there were changed country conditions in Mauritania. The State Department's Country Report, for instance, showed that, since the period of petitioner's forced deportation, thousands of expelled Mauritanians of persecuted ethnic groups, including petitioner's ethnic group, had returned to Mauritania. JA 107, 391; *see Country Reports on Human Rights Practices-2002, Mauritania*, U.S. Department of State, Bureau of Democracy, Human Rights, and Labor (Mar. 31, 2003). Moreover, the Mauritanian government now "is in part comprised of individuals who are of the same ethnic group as is [petitioner]," several of whom had been elected to or obtained high governmental offices. JA 57, 107. Such findings by the IJ, based upon substantial evidence in the record, were well-reasoned and under our deferential standard of review should not be overturned.

We uphold, therefore, the IJ's determination that petitioner "failed to sustain his burden of proof and persuasion" as to withholding of removal. Since petitioner bases his CAT claim on the same grounds as his request for withholding of removal, petitioner also fails to demonstrate that upon return to Mauritania, it is more likely than not he would be tortured. *Berri*, 468 F.3d at 398. For the same reasons, we further uphold the IJ's determination that petitioner failed to demonstrate grounds for relief under the CAT.

III. **Due Process**

Finally, petitioner claims that he was deprived of procedural due process because his proceedings were conducted by video and because of his interpreter's alleged incompetence. We disagree. Petitioner's able counsel points out several instances where certain statements were repeated for the benefit of petitioner's interpreter or petitioner himself, as well as instances where pronunciations were an issue. However, none of these events deprived petitioner of the procedural due process required by the Constitution. The situation is unlike that of *Amadou v. INS*, 226 F.3d 724 (6th Cir. 2000). There, the interpreter and the petitioner spoke entirely different dialects, and there were several times during the testimony when problems with the dialects' vocabulary, semantics, and coherence directly contributed to the interpreter's confusion. *Id.* at 725-27. Here, by contrast, the interpreter only asked that petitioner repeat discrete parts of his testimony and slow down to allow him to interpret in moderated amounts. At no point does the record indicate that the interpreter was incapable of interpreting the language petitioner spoke or that he spoke a different dialect. Moreover, where there was any confusion vis-a-vis the interpreter, it concerned testimony that was not critical or even relevant to the IJ's ultimate determination. *Cf. id.* at 727 ("The record indicates that the interpreter's faulty translation directly prejudiced [the petitioner]").

As for the effect of video conferencing the hearing, petitioner's counsel only states conclusorily that such medium had a detrimental effect on petitioner's ability to be fully and fairly heard. Pet. Br. at 12-13. We reject the argument; the record provides no indication petitioner was prejudiced by the video conferencing. *See Rusu v. INS*, 296 F.3d 316, 324 (4th Cir. 2002).

\* \* \*

We have considered petitioner's remaining arguments and find them to be without merit. For the foregoing reasons, the petition for review is dismissed insofar as concerns petitioner's application for asylum, and in all other respects it is denied.