KAREN NELSON MOORE, Circuit Judge,
dissenting.
I would grant a rehearing by the panel because of the substantial issues raised by Cherif Diallo (“Diallo”) in her petition for rehearing. The crucial issue in this case is whether the fact that the female genital mutilation that Diallo experienced is not likely to be repeated defeats her claim of a well-founded fear of future persecution. A burden-shifting framework governs applications for asylum. “The burden of proof is on the applicant for asylum to establish that he or she is a refugee----The applicant may qualify as a refugee either because he or she has suffered past persecution or because he or she has a well-founded fear of future persecution.” 8 C.F.R. § 208.13(a)-(b) (emphasis added). The applicant’s testimony, “if credible, may be sufficient to sustain the burden of proof without corroboration.” 8 C.F.R. § 208.13(a). “If an applicant establishes that he [or she] has suffered past persecution, there is a rebuttable presumption that he [or she] has a well-founded fear of future persecution.” Bern v. Gonzales, 468 F.3d 390, 396 (6th Cir.2006) (citing 8 C.F.R. § 208.13(b)(1)). “The INS may rebut that presumption by establishing, by a preponderance of the evidence, that conditions in the applicant’s country have changed since the time of the persecution to such an extent that the applicant no longer has a well-founded fear of being persecuted if she were to return.” Rre-shpja v. Gonzales, 420 F.3d 551, 555 (6th *382 Cir.2005) (citing Mikhailevitch v. INS, 146 F.Sd 384, 389 (6th Cir.1998)). Under this burden-shifting framework, the key questions in this case are twofold: whether Diallo suffered past persecution on account of her membership in a particular social group and, if so, whether the government met its burden of showing “a fundamental change in circumstances.”[1] See 8 C.F.R. § 208.13(b)(l)(i)(A).
I. PAST PERSECUTION ON ACCOUNT OF DIALLO’S SOCIAL-GROUP MEMBERSHIP
Undeniably, Diallo’s suffering female genital mutilation as a young child amounted to past persecution. In Abay v. Ashcroft, 368 F.3d 634 (6th Cir.2004), we held that “[florced female genital mutilation involves the infliction of grave harm constituting persecution on account of membership in a particular social group that can form the basis of a successful claim for asylum.” Id. at 638 (citing In re Fauziya Kasinga, 21 I. & N. Dec. 357, 365 (BIA June 13, 1996)). “Often performed under unsanitary conditions with highly rudimentary instruments, female genital mutilation is ‘extremely painful,’ ‘permanently disfigures the female genitalia, [and] exposes the girl or woman to the risk of serious, potentially life-threatening complications,’ including ‘bleeding, infection, urine retention, stress, shock, psychological trauma, and damage to the urethra and anus.’” Id. (quoting Kasinga, 21 I. & N. Dec. at 361). “Female genital mutilation can result in the permanent loss of genital sensation in the victim and the consequent elimination of sexual pleasure.” Id. Diallo’s testimony before the Immigration Judge (“IJ”) lends personal detail to this court’s general description of female genital mutilation. She recalled the extreme pain that she suffered during the course of the mutilation and in the weeks that followed. She also testified that as a result of the female genital mutilation performed on her she fears heterosexual intercourse.
Although we did not specifically delineate in Abay the parameters of the social group to which the petitioner in that case belonged, other decisions by the Sixth Circuit, the Board of Immigration Appeals (“BIA”), and the Tenth Circuit make clear that female members of a tribe or ethnicity may constitute a social group. The Sixth Circuit has adopted the BIA’s definition of a social group set forth in Matter of Acosta, 19 I & N. Dec. 211, 233-34 (BIA 1985), overruled on other grounds by In re Mo-gharrabi, 19 I. & N. Dec. 439 (1987). Cas-tellano-Chacon v. INS, 341 F.3d 533, 546 (6th Cir.2003). In Acosta, the BIA defined a social group as “a group of persons all of whom share a common, immutable characteristic. The shared characteristic might be an innate one such as sex, color, or kinship ties, or in some circumstances it might be a shared past experience.” Cas-tellano-Chacon, 341 F.3d at 547 (quoting Acosta, 19 I & N. Dec. at 234). Both the *383 BIA and the Tenth Circuit have applied the Acosta definition to determine that petitioners who experienced genital mutilation thereby suffered persecution on account of their social-group membership. The BIA has held that young female members of a tribe who had not yet had and who opposed female genital mutilation constituted a social group, Kasinga, 211. & N. Dec. at 365, and the Tenth Circuit has similarly held in a genital-mutilation case that female members of a tribe constitute a social group. Niang v. Gonzales, 422 F.3d 1187, 1198-1200 (10th Cir.2005) (requiring only gender or membership in tribe to identify social group). Because these opinions followed Acosta, as the Sixth Circuit does, I find them particularly persuasive. Certainly, both one’s sex and one’s ethnicity are immutable characteristics. Following the above opinions as well as our decision in Abay, we must conclude that Diallo’s experience of female genital mutilation amounted to past persecution on account of her sex and membership in the Fulani ethnic group.
II. THE GOVERNMENT’S REBUTTAL BURDEN REGARDING FUTURE PERSECUTION
Under the burden-shifting framework established by the Code of Federal Regulations, Diallo’s experience of genital mutilation entitles her to a presumption of a well-founded fear of future persecution. The government’s arguments in response to Diallo’s petition for rehearing confuse the applicable standards in this case. First, the government argues that Diallo has waived the argument that she is eligible for asylum solely on the basis of past genital mutilation and that, regardless, the BIA has rejected the Ninth Circuit’s view of genital mutilation as a “continuing violation” creating a fear of future persecution that the government cannot rebut. See In re A-T, 24 I. & N. Dec. 296, 299-301 (BIA 2007) (rejecting the Ninth Circuit’s continuing-violation theory of female genital mutilation). Diallo, however, did not and did not need to argue that genital mutilation constitutes a continuing violation. Instead, under 8 C.F.R. § 208.13(b)(l)(i), the government has the burden of rebutting the presumption that Diallo has a well-founded fear of future persecution by proving either that the conditions in Guinea have fundamentally changed or that Diallo could avoid persecution by relocating within Guinea.
The government proceeds to argue, second, that Diallo “failed to establish that she would undergo [genital mutilation] again or that she otherwise has a well-founded fear of future persecution.” Respondent’s Opp. to Pet. for Rehr’g at 8. The government’s argument, however, shifts the burden of establishing a well-founded fear of future persecution back onto Diallo when the regulatory framework requires the government to rebut a presumption of this fear. Arguing that Diallo is not likely to undergo genital mutilation again artificially narrows the issue in this case. “The loss of a limb [is a] form[ ] of past persecution ... routinely assessed under the past persecution standards specified in the asylum and withholding of removal regulations.” In re A-T, 24 I. & N. Dec. at 301. We would not take seriously the argument that someone who lost a limb in the course of persecution on account of his social-group membership categorically could not establish a well-founded fear of future persecution only because he could not again lose that same limb. Dial-lo suffered past persecution because she is a Fulani female, and she is entitled to a rebuttable presumption of a well-founded fear of future persecution on account of her sex and ethnicity.
The majority opinion’s suggestion that “the unique cultural underpinning behind *384 FGM rebuts the presumption that a female will be subject to future persecution,” maj. op. at ¶ 34, extends beyond existing law. The BIA’s In re A-T decision, which rejected the Ninth Circuit’s continuing-violation theory of female genital mutilation, did not state that past genital mutilation can never create a well-founded fear of future persecution. The BIA held only that the claim of past genital mutilation should be analyzed under the ordinary burden-shifting framework governing asylum claims. 24 I. & N. Dec. at 301. As I have explained above, under the applicable burden-shifting framework Diallo does not need to prove that she will undergo further genital mutilation in the future. Instead, the government has the burden of rebutting the presumption that she will again experience persecution on the basis of her sex and ethnicity.
Both the majority opinion and the Immigration Judge have also ignored the possibility that Diallo might be entitled to asylum even if the government successfully rebutted the presumption of a well-founded fear of future persecution. See Mohammed v. Gonzales, 400 F.3d 785, 801 (9th Cir.2005); In re A-T, 24 I. & N. Dec. 296, 300 (BIA 2007). An asylum “applicant may qualify as a refugee either because he or she has suffered past persecution or because he or she has a well-founded fear of future persecution.” 8 C.F.R. § 208.13(b). If the government successfully rebuts the presumption of a fear of future persecution afforded applicants who have demonstrated past persecution, the decision-maker still has the discretion to grant asylum. The decision-maker may grant asylum if: 1) the petitioner has shown “compelling reasons for being unwilling or unable to return to the country arising out of the severity of the past persecution; or” 2) the petitioner has shown “that there is a reasonable possibility that he or she may suffer other serious harm upon removal to that country.” 8 C.F.R. § 208.13(b)(1)(iii)(A)-(B). I think that the severity of the persecution that Diallo suffered as a victim of past female genital mutilation would entitle her to consideration for asylum under this humanitarian exception.
Because the government has not met its burden of rebutting the presumption that Diallo has a well-founded fear of future persecution, I would grant Diallo’s petition for rehearing, grant her petition for review, and remand to the BIA. I respectfully dissent.

. The majority opinion cites the familiar standard that an asylum petitioner’s " 'well-founded fear must be both subjectively genuine and objectively reasonable.’ " Maj. Op. at 11 20 (quoting Daneshvar v. Ashcroft, 355 F.3d 615, 623 (6th Cir.2004)); see also Perkovic v. INS, 33 F.3d 615, 620-21 (6th Cir.1994) (citing INS v. Cardoza-Fonseca, 480 U.S. 421, 430-31, 440, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987)). Under the framework outlined in the Code of Federal Regulations, however, a petitioner bears the burden of meeting this standard only if she has not established past persecution or if she has established past persecution and the government has rebutted this evidence by showing changed country conditions. See Ali v. Ashcroft, 366 F.3d 407 (6th Cir.2004) (holding that because the asylum applicant had not proved past persecution he was not entitled to a presumption of a well-founded fear of future persecution and had to establish such a “reasonable possibility” of persecution); Ouda v. INS, 324 F.3d 445, 450 (6th Cir.2003) (same).