**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0707n.06

**No. 10-4542**

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| SIDI AHMED OULD MOHAMED EL MOCTAR; ZEINEBOU MINT YESLEM | ) ) ) | **FILED**<br>*Oct 11, 2011*<br>LEONARD GREEN, Clerk |
| Petitioners, | ) ) | ON PETITION FOR REVIEW FROM THE |
| v. | ) ) | UNITED STATES BOARD OF IMMIGRATION APPEALS |
| ERIC H. HOLDER, JR., Attorney General, | ) ) | |
| Respondent. | ) ) | |

Before: GIBBONS, ROGERS, and COOK, Circuit Judges.

COOK, Circuit Judge. Sidi Ahmed Ould Mohamed El Moctar and his wife, Zeinebou Mint Yeslem, ("Petitioners") seek review of the Board of Immigration Appeals' ("BIA") decision affirming an Immigration Judge's ("IJ") denial of (1) their motion for a continuance and (2) their application for asylum and withholding of removal. For the reasons that follow, we deny the petition.

I.

From our review of the parties' briefs and the administrative record, we confirm that the IJ's decision provides an accurate synopsis of Petitioners' case:

The respondents are a husband and wife who are natives and citizen[s] of Mauritania; the male respondent is 46 years old, and the female respondent is 26 years old. The male respondent entered the United States on January 2, 1999, as a nonimmigrant foreign government official. [*See* 8 U.S.C. § 1101(a)(15)(A)(ii).] He was issued the nonimmigrant visa at the U.S. Embassy in Nouakchott on November 16, 1998, in order to attend the U.N. World Television Forum in New York City. The female respondent entered the United States on March 25, 2001, as a nonimmigrant visitor for pleasure. She also obtained a nonimmigrant visa at the U.S. Embassy in Nouakchott, because she was accompanying a Mauritanian national who was traveling to the United States for medical treatment. On November 28, 2001, the Immigration and Naturalization Service ("INS," now known as the Department of Homeland Security, or "DHS") issued Notices to Appear ("NTA") (Form I-862) against the respondents.

The respondents through counsel, have admitted that all factual allegations in the respective NTAs are true and correct, and that they are deportable as charged. [*See* 8 U.S.C. § 1229a(c)(3).] The respondents declined to designate a country in the event of removal, and the Court has directed Mauritania.

On or about October 1, 2001, the lead respondent filed an application for asylum with the INS, in which he included his spouse.[1] Under [8 U.S.C. § 1158(a)], the respondent's asylum application also constitutes a request for withholding of removal pursuant to [8 U.S.C. § 1231(b)(3)]. In addition, the asylum application constitutes a request for protection under Article 3 of the Convention Against Torture. [*See* 8 C.F.R. § 1208.12.] The male respondent indicated that he does not have a valid passport or other travel documentation, so he cannot show eligibility for post-conclusion voluntary departure. *See* 8 C.F.R. § 1240.26(c)(2). The female respondent is not eligible for post-conclusion voluntary departure under [8 U.S.C. § 1229c(b)(1)(A)], because she was not physically present in the United States for a period of 1 year when the NTA was served on her on December 5, 2001.

---

[1]In his analysis, the IJ noted that although El Moctar included Yeslem as a derivative beneficiary on his asylum application, she would not be eligible for withholding of removal under the Immigration and Nationality Act (the "INA") or the Convention Against Torture (the "CAT"), because those applications are not derivative of El Moctar's asylum application. *See In re A-K-*, 24 I. & N. Dec. 275, 279-80 (B.I.A. 2007).

. . . .

The record reflects that on May 22, 2007, the Court mailed a hearing notice to the respondents, advising them that the individual hearing concerning the asylum application would be conducted on April 22, 2008. The respondents, through former counsel, filed a motion for a continuance on April 2, 2008, because the male respondent was awaiting unspecified documentation from a friend in Mauritania. Then, on or about April 7, 2008, the respondents filed a motion to substitute counsel, which was approved by the Court on April 14, 2008, and the Court indicated in an interim order that the hearing would proceed as scheduled on April 22, 2008. On April 16, 2008, the respondents through current counsel filed another motion for a continuance, advising that current counsel had been unable to obtain the file from former counsel, and that he needed time to prepare for the case. This continuance motion was denied on April 17, 2008, wherein the Court advised that the NTAs had been filed with the Court in 2001, and that the respondents' retaining new counsel 2 weeks prior to the scheduled hearing was not "good cause" for further delay in the proceedings. *See Berri v. Gonzales*, 468 F.3d 390 (6th Cir. 2006).

On the day of the merits hearing, respondents' counsel advised that he had received the respondents' file less than 2 days prior to the scheduled hearing, and counsel accordingly renewed his continuance motion orally. Considering all the circumstances surrounding the continuance request, I again concluded that "good cause" for a continuance had not been established. *See* 8 C.F.R. § 1003.29. Based upon counsel's asserted lack of time to prepare for the case, and at counsel's request, [I] conducted the examination of both the male and female respondents. *See* [8 U.S.C. § 1229a(b)(1)] (providing the Immigration Judge with authority to conduct an examination of the alien and any witnesses).

Prior to his testimony, the male respondent indicated under oath that the statements contained in his Form I-589 were all true and correct to the best of his knowledge. This version of the asylum application was prepared with the assistance of former counsel, Samuel Ezenagu, and included changes to the handwritten application that the respondent originally filed in October 2001. The record reflects that Mr. Ezenagu signed the Form I-589 as the "preparer" of the application. Mr. Ezenagu also confirmed, under penalty of perjury, that the completed application was read back to the male respondent in a language that he understood before the male respondent signed it.

The asylum and withholding requests are based on the male respondent's testimony that he was detained, questioned, and beaten on two separate occasions by the authorities in Mauritania. He said that the first arrest took place in October 1991, the same month that the Union of Democratic Forces ("UFD") Party, of which he said he was a founding member, was established. According to the respondent, he was arrested along with twelve other students on this occasion, due to their participation in a demonstration which involved thousands of persons. He claimed he was detained for 72 hours, and that he was mistreated by the persons who interrogated him. Following his release, the respondent returned to Morocco to complete his graduate studies in Public Administration. He returned to Mauritania in 1992, and was employed as a human resources director with a television station in Nouakchott. He retained this position until his departure from Mauritania in January 1999.

The respondent testified further that his second arrest occurred on December 26, 1998, after he had secured the visa to attend the U.N. World Television Forum in New York City. The respondent said that he was detained for 4 hours on this occasion, and that he was asked about the purpose of his trip to the United States, as well as for information concerning other UFD Party members. The respondent claimed that he refused to provide this information, and that he was struck in the nose as a result of this refusal, and he was rendered unconscious in the process. He said that he had a friend who was a nurse and who attended to his injuries. The respondent advised that despite being able to retain his position with the Mauritanian television station from 1992 to 1998, he was often denied certain privileges, including the opportunity to travel abroad, because of his political opinion in support of the UFD Party.

The female respondent testified that about 10 days after her husband's departure for the United States, she too was taken into custody and questioned as to his whereabouts. She claimed she was molested by the officer who interrogated her, but indicated that she was not raped. The female respondent testified that she stopped attending school and went into hiding in Mauritania following this incident. She stated that her father assisted her in obtaining a nonimmigrant visa for travel to the United States, because she accompanied a family friend who was traveling to this county to obtain medical treatment. The respondents have two United States citizen children, ages 4 and 6.

*In re El Moctar*, Nos. A79-587-435, A79-587-436, slip op. at 1–5 (U.S. Immigration Ct. July 10, 2008) (footnote and citations omitted).

Following the merits hearing, the IJ denied Petitioners' request for relief and ordered that they be removed to Mauritania. As the IJ's decision explained, the statute barred their untimely asylum application, and their uncorroborated testimony lacked sufficient credibility to warrant withholding of removal. *Id.* at 6–12. In November 2010, the BIA issued an order affirming the IJ's decision and dismissing their appeal. *In re El Moctar*, Nos. A079-587-435, A079-587-436, slip op. at 5 (B.I.A. Nov. 22, 2010). Petitioners now seek review of the BIA's order, challenging the denial of (1) their motion for a continuance, (2) their asylum application, and (3) their application for withholding of removal.

II.

A.      Standard of Review

When the BIA issues its own opinion, we review the BIA's decision as the final agency determination. *Morgan v. Keisler*, 507 F.3d 1053, 1057 (6th Cir. 2007). We review questions of law de novo, granting substantial deference to the BIA's interpretation of the statute and applicable regulations. *See Stserba v. Holder*, 646 F.3d 964, 971 (6th Cir. 2011). Conversely, we review its factual findings for substantial evidence and reverse only if they are "manifestly contrary to law,"

8 U.S.C. § 1252(b)(4)(C), that is, if the evidence "not only supports a contrary conclusion, but indeed *compels* it," *Ouda v. INS*, 324 F.3d 445, 451 (6th Cir. 2003) (internal quotation marks omitted).

B.      Denial of Continuance

Petitioners first argue that the BIA erred in affirming the IJ's denial of their motion for a continuance, because their attorney's professed unpreparedness "effectively denied them the assistance of any counsel" and thereby violated their due process rights.

"The Immigration Judge may grant a motion for continuance for good cause shown." 8 C.F.R. § 1003.29 (2010). We review the IJ's denial of a continuance for an abuse of discretion. *Abu-Khaliel v. Gonzales*, 436 F.3d 627, 634 (6th Cir. 2006). The denial results in an abuse of discretion if it lacks a rational explanation, inexplicably departs from established policies, or rests on an impermissible basis such as invidious discrimination against a particular race or group. *See id*.

After reviewing the Petitioners' hearing transcript, we resolve that the IJ did not abuse his discretion by denying their motion for a continuance. As the IJ explained, Petitioners' case had been pending since 2001, and the date of the hearing had been set for nearly a year. Under these circumstances, he did not consider their last-minute substitution of counsel good cause for a continuance. To justify his stance, the IJ cited *Berri v. Gonzales*, 468 F.3d 390 (6th. Cir 2006), a case affirming an IJ's denial of a continuance—despite petitioners' eleventh-hour substitution of

counsel—in the face of a long-standing hearing date. *Id.* at 394–95. Petitioners try, unpersuasively, to distinguish *Berri* factually, never even arguing that the IJ's decision actually constituted an abuse of discretion. Absent any such assertion, we defer to the IJ's judgment and uphold his determination.

To the extent Petitioners lodge their complaint as a due process violation, this effort also fails. An IJ possesses "broad discretion in conducting [a deportation] hearing." *Castellano-Chacon v. INS*, 341 F.3d 533, 553 (6th Cir. 2003). "The failure to be granted discretionary relief does not amount to a deprivation of a liberty interest." *Huicochea-Gomez v. INS*, 237 F.3d 696, 700 (6th Cir. 2001); *accord Abu-Khaliel*, 436 F.3d at 635. "To prevail on a due process challenge to deportation proceedings, [an alien] must show error and substantial prejudice." *Gishta v. Gonzales*, 404 F.3d 972, 979 (6th Cir. 2005) (alteration in original) (internal quotation marks and citation omitted). "In other words, the alien must demonstrate that [a] purported defect 'led to a denial of justice,' and that the 'prejudice materially affected the outcome of his . . . case.'" *Pergjoni v. Holder*, 311 F. App'x 892, 896 (6th Cir. 2009) (second alteration in original) (citations omitted).

As we explain above, we are unconvinced that the IJ arbitrarily denied Petitioners' continuance motion. Petitioners also fail to show prejudice. In their brief, Petitioners argue only that, had their attorney been better prepared, he might have helped them offer more convincing testimony or include additional corroborating evidence. During the merits hearing, Petitioners' counsel stated that he met with El Moctar to discuss the petition, and believed that he could explain and articulate the details of his case. Given the administrative record here, we do not see what

counsel's participation in the questioning would have added to the proceedings.  Moreover, we note that Petitioners and their prior counsel had seven years to collect corroborating evidence for their hearing.  Because Petitioners fail to show that the IJ's denial of their continuance motion resulted in error or prejudice, we reject their due process claim.

C.      Denial of Asylum Application

Next, Petitioners contend that the BIA erroneously affirmed the IJ's denial of their asylum application, because they should have been granted refugee status.  This challenge misconstrues the IJ's decision, which made no finding as to whether Petitioners qualified as "refugees."  Instead, as the IJ (and the BIA) explained, El Moctar did not apply for asylum within one year of his arrival to the United States, as required by statute.  *See* 8 U.S.C. § 1158(a)(2)(B) (2006).  As such, he was ineligible for asylum absent a showing of extraordinary circumstances justifying the delay.  *See id.* § 1158(a)(2)(D).   Upon reviewing the facts of the case, the IJ reasoned that El Moctar's justification—that spies might report his asylum application to the Mauritanian government, spurring harm to his wife—fell outside the regulatory definition of "extraordinary circumstances," *see* 8 C.F.R. § 1208.4(a)(5).  Accordingly, the IJ dismissed his asylum application.  As the government correctly argues, we lack jurisdiction to review the IJ's factual findings of timeliness.  *See* 8 U.S.C. § 1158(a)(3); *Haider v. Holder*, 595 F.3d 276, 281 (6th Cir. 2010); *see also Almuhtaseb v. Gonzales*, 453 F.3d 743, 748 (6th Cir. 2006) (denying jurisdiction to review an IJ's "predominantly factual" application of § 1158(a)(2)'s "changed circumstances" provision).  And because Petitioners raise no

legal or constitutional arguments refuting the IJ's determination, *see Almuhtaseb*, 453 F.3d at 748

n.3 (noting that these non-factual attacks are the only means by which petitioners may contest an IJ's

invocation of § 1158(a)(3)'s time bar), we may not disturb the BIA's decision.

D.       Denial of Application for Withholding of Removal

Finally, Petitioners claim that the BIA's denial of their application for withholding of

removal lacked evidentiary support.   Like that of the IJ, the BIA's decision rested upon its

determination that Petitioners provided neither credible testimony nor corroborating evidence

regarding their past abuse, and thus failed to prove a threat of persecution or torture if they returned

to Mauritania.  *See* 8 C.F.R. § 1208.16(b) ("The burden of proof is on the applicant for withholding

of removal under [the INA] to establish that his or her life or freedom would be threatened in the

proposed country of removal on account of race, religion, nationality, membership in a particular

social group, or political opinion."); *id.* § 1208.16(c)(2) ("The burden of proof is on the applicant

for withholding of removal under [the CAT] to establish that it is more likely than not that he or she

would be tortured if removed to the proposed country of removal.").

Because the BIA's conclusion hinges upon its credibility assessment—a factual

determination—we review the decision under the substantial-evidence standard.  *Hamida v.

Gonzales*, 478 F.3d 734, 736 (6th Cir. 2007).  In reviewing the BIA's finding, we ensure that it is

"supported by specific reasons" and "based on issues that go to the heart of the applicant's claim."

*Sylla v. INS*, 388 F.3d 924, 926 (6th Cir. 2004); *see also Singh v. Ashcroft*, 398 F.3d 396, 402 (6th

Cir. 2005) ("If discrepancies cannot be viewed as attempts by the applicant to enhance his claims of persecution, they have no bearing on credibility." (internal quotation marks and citation omitted)).[2] Ultimately, however, we afford the BIA's adverse credibility finding "substantial deference," *Sylla*, 388 F.3d at 926, and treat its decision as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary," 8 U.S.C. § 1252(b)(4)(B).

In reviewing Petitioners' application and testimony, the BIA highlighted numerous disparities that it assessed as undermining their credibility. First, several seemingly incongruent details rendered their account implausible. *See Dorosh v. Ashcroft*, 398 F.3d 379, 382 (6th Cir. 2004) ("[C]redibility encompasses not just consistency but also plausibility and sufficient detail."). For example, El Moctar claimed to fear persecution from the Mauritanian government, yet worked for a government-controlled television station for six years before coming to the United States—to which he traveled using a government official's visa. While in the United States, he met several times with the Mauritanian Ambassador. Moreover, El Moctar's wife testified that soon after his departure, she was stopped and questioned by Mauritanian police as to his whereabouts, but "she was not aware that he was politically involved." We reiterate that politically motivated persecution formed the entire basis for Petitioners' withholding request.

---

[2]The IJ correctly noted that the REAL ID Act of 2005, which modifies the standard determining credibility determinations, is inapplicable here because El Moctar filed his asylum application and request for withholding of removal in 2001. *See Kaba v. Mukasey*, 546 F.3d 741, 749 n.1 (6th Cir. 2008).

Similarly, inconsistencies surrounding El Moctar's arrests gave the BIA pause. For instance, El Moctar claimed to have been arrested in Mauritania in a large student protest during October 1991, yet his petition stated that he was studying in Morocco at that time. Likewise, El Moctar's written and oral statements differed as to the month of his second arrest, and divergent details made the accounts hard to reconcile. As the IJ also commented, "This is not simply a matter of confusion over dates . . . ."

Finally, the BIA noted that although Petitioners offered supporting documents as to their identities (including a marriage certificate, graduate diplomas, and proof of employment), none of this evidence supported the central facet of their claim—that they suffered persecution at the hands of the Mauritanian government. For example, El Moctar might have offered proof of his membership in the UFD, photographs of the injuries he allegedly sustained, or newspaper accounts of the large student protest he described. We recognize that the regulations do not *require* documentary evidence. *See* 8 C.F.R. § 208.16(b), (c)(2). But "where it is reasonable to expect corroborating evidence for certain alleged facts pertaining to the specifics of an applicant's claim, such evidence should be provided. . . . The absence of such corroborating evidence can lead to a finding that an applicant has failed to meet her burden of proof." *Lin v. Holder*, 565 F.3d 971, 977 (6th Cir. 2009) (alteration in original) (internal quotation marks and citation omitted).

In sum, we believe that the BIA's observations, which find support in the record and go to the heart of Petitioners' claim, provide an adequate foundation for the BIA's negative credibility

determination and ultimately its denial of the Petitioners' application for withholding of removal.

As such, Petitioners cannot show "that the evidence presented was so compelling" that any reasonable factfinder would have granted their application.  *See Ouda*, 324 F.3d at 451.

III.

For these reasons, we deny the petition for review.