NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0959n.06

No. 13-3133

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

MUHAMMAD SATTAR ABID,          )
                                )
    Petitioner,          )
                                )
v.                              )
                                )   ON PETITION FOR REVIEW OF A
ERIC H. HOLDER, JR., Attorney General,   )   FINAL ORDER OF THE BOARD OF
                                )   IMMIGRATION APPEALS
    Respondent.          )
                                )

**FILED**
Nov 06, 2013
DEBORAH S. HUNT, Clerk

Before:  SUTTON and KETHLEDGE, Circuit Judges; DOW, District Judge.[*]

SUTTON, Circuit Judge.  Muhammad Sattar Abid challenges the Board of Immigration Appeals' denial of his applications for asylum, withholding of removal and protection under the Convention Against Torture.  Substantial evidence supports the Board's finding that Abid's allegations of persecution in Pakistan were not credible, and as a result we must deny his petition for review.

I.

While living in the country of his birth, Pakistan, Abid in 1996 joined the Pakistan People's Party, a political group devoted to providing better treatment for the poor and homeless, improving

---

[*] The Honorable Robert M. Dow, Jr., United States District Judge for the Northern District of Illinois, sitting by designation.

employment conditions, developing rural areas and supplying free education. As a member, Abid was responsible for sharing the party's platform with others. He also sometimes attended political rallies, which is where his alleged troubles began.

While attending a rally in 1996, Abid and several other party members were arrested. Abid was held in prison for two weeks. What happened in the prison remains unclear. In his application for asylum, Abid claimed that "the police beat [him] every day [he] was there" and that they also let five members of an opposing political party beat him in his cell, causing injuries that required hospital treatment. AR 239. But in his testimony before the immigration judge, Abid stated only that members of the opposing political party attacked him in the jail and the police refused to help; he said nothing about police beatings, and he did not refer to his hospitalization until the government raised it on cross-examination.

Abid's political troubles apparently persisted after the 1996 incident. He claims that the same rival political party that attacked him in prison also falsely accused him of murder in 1999. Again, though, the details of Abid's story differ with each re-telling. Abid stated in his written application that he was acquitted "after a lot of struggle and a lot of bribe[s] from our side to police and Judges." AR 239. But before the immigration judge, he testified that he was acquitted because he encouraged the police to investigate his alibi defense, which eventually led them to clear him of all charges. At that point, he disavowed any "knowledge about a bribe being offered to anyone." AR 151–52.

During the government's cross-examination, Abid added a third incident to his bill of particulars—one not mentioned in his asylum application or on direct examination. In 2001, as Abid tells it, members of the opposing political party fired guns at his house for three or four hours. Although the shooters used guns that "did not have a long fighting range," AR 136, they decided to shoot at him from "half a mile away," AR 137. In the course of the shooting spree, the perpetrators yelled Abid's name, allowing Abid to identify them as members of the opposing party. Despite the distance and the fact Abid had never spoken to them, he claimed to recognize the shooters' voices as the same ones he had heard "talking loudly" at a political rally five years earlier. AR 136–38.

The immigration judge denied Abid's applications for asylum, withholding of removal and protection under the Convention Against Torture. Citing "glaring inconsistencies between the application . . . and the testimony," the judge refused to credit Abid's account or, perhaps more accurately, accounts. AR 36–38. Going further, he declared Abid's application frivolous, concluding that Abid had knowingly falsified his claim. The Board affirmed the immigration judge's adverse credibility finding, relying on the immigration judge's recitation of inconsistencies, but it reversed the frivolousness holding.

II.

In seeking asylum, Abid must show that he "is unable or unwilling to return to" Pakistan "because of persecution or a well-founded fear of persecution on account of . . . [his] political

opinion." 8 U.S.C. § 1101(a)(42)(A); 8 U.S.C. § 1158(b)(1)(A). An applicant's testimony by itself may suffice to meet this standard, *id.* § 1158(b)(1)(B)(ii), but only if the immigration judge concludes that the testimony is credible, a finding over which the on-the-scene immigration judge has substantial leeway. An immigration judge may find an applicant's statements lack credibility based on "the totality of the circumstances . . . without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim." *Id.* § 1158(b)(1)(B)(iii). We are bound to respect this adverse credibility finding, when affirmed by the Board, if substantial evidence supports it. *See El-Moussa v. Holder*, 569 F.3d 250, 255–56 (6th Cir. 2009).

Ample evidence supports this finding. Abid did not testify consistently about *any* of the three incidents of persecution that formed the basis for his asylum application. And those inconsistencies were not trifles. In many instances, they went to the heart of his asylum claim and fairly could "be viewed as attempts by the applicant to enhance his claims of persecution." *Ndrecaj v. Mukasey*, 522 F.3d 667, 674–75 (6th Cir. 2008). As to the first: When describing his 1996 arrest to the immigration court, Abid never mentioned that the police beat him every day for two weeks, a significant detail that appeared in his asylum application and that (one might expect) would merit discussion at his asylum hearing. *See Berri v. Gonzales*, 468 F.3d 390, 395 (6th Cir. 2006). As to the second: Abid gave contradictory stories about his arrest for murder in 1999, claiming bribery secured his release in his written account but claiming that an alibi defense, not bribery, earned his freedom in his oral testimony. As to the third: Abid's testimony about the shooting at his home in 2001 was not only omitted from his asylum application *and* his direct examination, but it also was

highly improbable. Why would the shooters fire from a half-mile away with short-range weapons? And how could Abid recognize distinct voices yelling from a half-mile away when his only exposure to the speakers was at a rally five years earlier? *See Ndrecaj*, 522 F.3d at 675; *Yu v. Ashcroft*, 364 F.3d 700, 703–04 (6th Cir. 2004).

Nor were Abid's attempts to explain these inconsistencies convincing. After the government pointed out Abid's contradictory statement about bribing officials in his asylum application, he claimed that he "got the[] document from Pakistan" and thus it probably had "some errors." AR 152. When the government responded that *he* had prepared his application, he pivoted: The document had errors because his "knowledge of English is very poor," and he did not understand the meaning of the word "bribe." AR 152. When asked why he did not include the 2001 shooting in his asylum application, he offered little in the way of an explanation, excusing the omission as an oversight: He "had no idea" that he would be asked about the incident, and no one told him that it "should be added" to his application. AR 141. He maintained this explanation even after the government pointed out that the application instructs asylum applicants to "explain in detail" any incidents of "harm or mistreatment or threats." AR 141, 239. Taken together, the serious inconsistencies between Abid's written and oral statements and the inherent implausibility of parts of his story supported the adverse credibility finding.

In the absence of credible testimony, Abid lacks sufficient evidence to support his claims for asylum, withholding of removal and protection under the Convention Against Torture. All that is left in the record to support his application is a letter confirming his membership in the Pakistan

People's Party, a medical record showing he received treatment at a hospital for two small gashes

on his scalp and a Pakistani court opinion acquitting him of murder.  Nothing shows persecution,

nothing shows torture and nothing shows a risk of either occurring if he returns home.  *See* 8 U.S.C.

§ 1101(a)(42)(A); 8 U.S.C. § 1158(b)(1)(A); 8 C.F.R. § 1208.16.

III.

For these reasons, we deny the petition for review.