NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0045n.06
Filed: January 21, 2009

No. 08-3078

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| ARTAN PRIFTI, | ) | |
| | ) | ON APPEAL FROM THE |
| Petitioner, | ) | BOARD OF IMMIGRATION |
| | ) | APPEALS |
| v. | ) | |
| | ) | **O P I N I O N** |
| MICHAEL B. MUKASEY, | ) | |
| United States Attorney General, | ) | |
| | ) | |
| Respondent. | ) | |

BEFORE:     MARTIN and McKEAGUE, Circuit Judges; COLLIER, District Judge.[*]

**CURTIS L. COLLIER, District Judge.**  Petitioner Artan Prifti ("Prifti") appeals the decision of

the Board of Immigration Appeals ("BIA") upholding the Immigration Judge's ("IJ") denial of

Prifti's request for asylum, withholding of statutory removal, and withholding under the U.N.

Convention Against Torture ("CAT").  Because we conclude the IJ did not err in determining Prifti's

testimony was incredible, because Prifti did not establish a well-founded fear of future persecution,

and because the IJ did not violate Prifti's due process right to a fair hearing, we **AFFIRM** the BIA's

decision.

**I.  FACTS AND PROCEDURAL HISTORY**

---

[*]The Honorable Curtis L. Collier, Chief United States District Judge for the Eastern District of Tennessee, sitting by designation.

Prifti entered the United States on July 14, 1997, at John F. Kennedy International Airport in New York City as a non-immigrant visitor on a tourist visa. He received permission to remain in the United States until January 13, 1998, but overstayed his visa. On March 31, 1998 he filed an application for asylum, withholding of removal, and protection under the CAT. On May 29, 1998, the former Immigration and Naturalization Service ("INS") filed a Notice to Appear in immigration court in New York City, beginning removal proceedings against Prifti.

Thereafter, several procedural events delayed a hearing on the merits of Prifti's asylum application. On June 24, 1998, Prifti appeared *pro se* before an IJ in New York City, so he was granted a continuance to seek counsel. He appeared with counsel before the same IJ on July 16, 1998, conceded he was subject to removal, and indicated his intent to amend and renew his asylum application. He moved for and was granted two changes of venue for his hearing on the merits: on November 25, 1998 to Chicago, and on October 20, 2002 to Detroit. Several other continuances were granted in 2002 and 2003 for various reasons. After filing another motion to change venue to Chicago, Prifti was denied a change on January 28, 2005, and the hearing on the merits of his asylum application took place in Detroit in January 2006.

At the January 2006 hearing, Prifti (the only witness) gave his testimony of the events that led him to leave Albania and seek asylum in the United States. In the middle of the proceedings, the IJ took a recess because Prifti had been "bleeding excessively in the bathroom," possibly from a nosebleed; as a result, his attorney requested a one-month adjournment, which the IJ denied. Later, after the hearing had resumed, Prifti requested a break because he was "not able to sit for a long time," to which the IJ responded, "Stand up right there. You can answer questions while you're standing." Prifti maintained his request for a break because he was feeling dizzy. The IJ granted a

five-minute break, but remarked to Prifti, "Sir, you think you could have dressed a little more coolly." When the IJ resumed after ten minutes, Prifti was not present; his attorney said he had passed out in the hallway and was bleeding profusely. His attorney requested a thirty-day continuance; the IJ reset the hearing for the next Friday.

The hearing resumed in April 2006 (the record is unclear why there was a four-month delay). After listening to the rest of Prifti's testimony, cross-examination, and closing arguments, the IJ issued an oral decision. In it, he found Prifti's testimony not credible because of numerous inconsistencies, both internally and with Prifti's written asylum application. He also held even if Prifti was credible and had established past persecution, country conditions had changed in Albania since Prifti's departure, such that he could no longer have a well-founded fear of future persecution. Accordingly, the IJ denied Prifti's application for asylum, withholding of removal, and withholding under the CAT, and ordered Prifti's removal.

Prifti timely appealed to the BIA, which issued a brief written opinion on December 27, 2007. The BIA affirmed the IJ's decision, holding the IJ's findings of fact regarding Prifti's credibility were not clearly erroneous, and alternatively, that Prifti did not have an objectively reasonable, well-founded fear of future persecution in Albania. Lastly, the BIA rejected Prifti's due process challenge to the IJ's conduct of the January 2006 hearing, finding no evidence of bias affecting the outcome of the case. Prifti timely appealed the BIA's decision to this Court.

## II. STANDARD OF REVIEW

When, as here, the BIA adopts an IJ's opinion in substantial part and briefly offers reasons of its own, we review both the BIA's decision and the IJ's decision. *Lazar v. Gonzales*, 500 F.3d 469, 474 (6th Cir. 2007). Because they are considered findings of fact, credibility determinations

are reviewed under the substantial evidence standard. *Ndrecaj v. Mukasey*, 522 F.3d 667, 674 (6th Cir. 2008). Under this highly deferential standard, an appellate court may not reverse an IJ's credibility determination merely because it would have decided the case differently. *Id.* Rather, the evidence must compel a different conclusion. *Id.* at 675. Additionally, factual determinations about whether an alien qualifies as a refugee are reviewed under the substantial evidence standard. *Patel v. Gonzales*, 470 F.3d 216, 219 (6th Cir. 2006). Then, "the discretionary judgment to grant asylum to a refugee is conclusive unless manifestly contrary to the law and an abuse of discretion." *Id.* (internal quotation marks omitted).

This Court reviews claims of due process violations in removal hearings de novo. *Mikhailevitch v. INS*, 146 F.3d 384, 391 (6th Cir. 1998).

### III. ANALYSIS

**A.      Credibility Determination**

An asylum applicant can qualify as a refugee (and thus be eligible for withholding of removal) because he has suffered past persecution, or because he has a well-founded fear of future persecution. 8 C.F.R. § 1208.13(b). While "irrelevant inconsistencies cannot constitute the basis for an adverse credibility determination," *Sylla v. INS*, 388 F.3d 924, 926 (6th Cir. 2004), "discrepancies may be relevant if they can 'be viewed as attempts by the applicant to enhance his claims of persecution,'" *Ndrecaj*, 522 F.3d at 674–75 (quoting *Daneshvar v. Ashcroft*, 355 F.3d 615, 623 (6th Cir. 2004)). That is, the inconsistencies must "go to the heart of the applicant's claim." *Id.* at 674.[1]

---

[1] The standard for assessing credibility was altered by the REAL ID Act, Pub. L. No. 109-13, Div. B. § 101(h)(2), 119 Stat. 231, 303 (2005). The REAL ID Act removed the requirement that inconsistencies go to the heart of the claim. *Koba v. Mukasey*, 546 F.3d 741, 749 n.1 (6th Cir. 2008). Because the REAL ID Act only applies to asylum applications filed after May 11, 2005, the standard set out in *Sylla* applies to this case.

In this case, many of the IJ's doubts about Prifti's credibility centered on Prifti's account of the July 1997 "triggering event" which caused him to flee Albania to the U.S. He claimed in the affidavit supporting his asylum application that, on his way to the airport, uniformed members of the Albanian secret police beat him and rendered him unconscious. Left for dead, he was found by cab driver Arjan Myftari, who took him to a hospital. Yet at the January 2006 hearing, Prifti testified he was already in a taxi with Myftari when the beating happened. When the hearing continued in April 2006, Prifti first testified he was traveling from the airport to his home, then testified he was on his way to the airport, then maintained again he was traveling *from* the airport, when the incident took place. The IJ found Prifti had presented inconsistent evidence regarding this incident, which was central to his decision to leave Albania. In other words, the IJ found a major inconsistency which went "to the heart of [Prifti's] claim." *Id.*

It is possible that inconsistencies in Prifti's testimony arose from his lack of facility with English, the fact he was using a translator, or because the event was so traumatic it caused him to confuse the sequence of events. However, the IJ identified additional, specific reasons he determined Prifti's testimony was not credible, as he was required to do. *Ndrecaj*, 522 F.3d at 674.

In addition to his doubts about Prifti's account of the July 1997 triggering event, the IJ noted several other inconsistencies. He noted Prifti could not obtain documents corroborating his claimed relationship with the leader of an Albanian opposition party. He observed Prifti had made approximately one thousand trips to Greece without ever seeking asylum there. And the IJ examined the "fraudulent character" of many of the newspaper articles Prifti had submitted to demonstrate country conditions in Albania. While these additional reasons may be, by themselves, minor or irrelevant, the IJ could permissibly base his credibility determination on their "cumulative effect," *Yu*

-5-

*v. Ashcroft*, 364 F.3d 700, 704 (6th Cir. 2004), and determine Prifti's testimony was not credible.

This Court employs the deferential substantial evidence standard for credibility determinations. *Sylla*, 388 F.3d at 925. This standard requires the Court to affirm the IJ's determination, even if the Court would reach a different conclusion, so long as there is substantial evidence supporting the IJ's determination. *See id.* That is, we cannot reverse the IJ's credibility determination unless the evidence compels a different result. *Ndrecaj*, 522 F.3d at 674–75. Here, we find substantial evidence supporting the IJ's decision that Prifti's testimony was incredible, based on the numerous inconsistencies in his account. Moreover, because Prifti bore the burden to establish his claim, 8 C.F.R. § 1208.13(a), and the IJ based his determination that Prifti made an inadequate showing of past persecution on Prifti's incredible testimony, Prifti did not meet his burden to establish past persecution. Hence, the IJ correctly made an adverse credibility determination and determined Prifti did not establish past persecution which would qualify him for asylum.

**B.      Well-Founded Fear of Future Persecution**

Even if an applicant cannot establish past persecution, he may nevertheless qualify for asylum based on his well-founded fear of future persecution. *Abay v. Ashcroft*, 368 F.3d 634, 636–37 (6th Cir. 2004).

> An alien may demonstrate a well-founded fear of future persecution by showing that (1) he or she has a fear of persecution in his or her country on account of race, religion, nationality, membership in a particular social group, or political opinion; (2) there is a reasonable possibility of suffering such persecution if he or she were to return to that country; and (3) he or she is unable or willing to return to that country because of such fear. An applicant's fear of persecution must be both subjectively genuine and objectively reasonable.

*Id.* at 637 (quoting *Mikhailevitch*, 146 F.3d at 389). However, an immigration judge "shall deny the asylum application of an alien found to be a refugee on the basis of past persecution" if a

preponderance of the evidence shows "[t]here has been a fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution in the applicant's country of nationality." 8 C.F.R. § 1208.13(b)(1)(i).

We are unpersuaded by Prifti's reliance on his anti-government writings to distinguish himself from unsuccessful Albanian asylum applicants in previous cases. In several cases involving Albanian asylum-seekers, this Court has found sufficiently changed country conditions in Albania to rebut the presumption of a well-founded fear. *See, e.g.*, *Ndrecaj*, 522 F.3d at 676 ("[O]n the basis of published reports of Albania's political development, we have previously stated that the conditions in Albania are 'fundamentally changed.'"); *Ramaj v. Gonzales*, 466 F.3d 520, 531 (6th Cir. 2006) ("[A]ny fear of persecution arising [from allegations of past persecution] is not 'well-founded' due to the changed country conditions in Albania."). These cases demonstrate the weakness of Prifti's claim of a well-founded fear of future persecution because, as we have recognized, country conditions in Albania have changed for the better. Political dissidence is relatively common in countries with emerging democracies, and in the past few years in Albania, "[i]ndividuals could freely criticize the government and its actions in print and broadcasts." *See* U.S. Dep't of State, Country Report on Human Rights Practices in Albania (2005), http://www.state.gov/g/drl/rls/hrrpt/2005/61633.htm (last visited Jan. 12, 2009) (hereinafter "State Department Report"). The fact Prifti wrote in opposition to the government, without more, does not constitute a specific threat indicating he will be targeted by the government for persecution, which *Mapouya* requires him to show.

Prifti argues he presents a unique situation because, as a member of the Albanian Democratic Alliance Party, he has written criticisms of the Albanian Democratic Party, whose leader, Luftar Xhuveli, is still in power. He maintains he testified and provided documentation that his fear of

persecution stems from his opposition to the Democratic Party and that he fears Xhuveli will attack him for his opposition if he returns to Albania. The IJ found this scenario implausible, and Prifti's testimony about it incredible, because Prifti did not document his fear of Xhuveli in his application for asylum or accompanying affidavit, nor did he mention it during direct examination.

An asylum applicant "cannot rely on speculative conclusions or mere assertions of fear of possible persecution, but instead must offer reasonably specific information showing a real threat of individual persecution." *Mapouya v. Gonzales*, 487 F.3d 396, 412 (6th Cir. 2007) (internal citation marks omitted). Here, Prifti asserts Xhuveli may retaliate against him for his political opposition if he returns to Albania, but does not assert any specific past instances, threats, or other indications Xhuveli is likely to target him individually. And his claim's persuasiveness is further diminished by the State Department's conclusion—relied upon by the IJ—that while the human rights situation in Albania is imperfect, government suppression of dissidents is not nearly as pervasive or likely to happen as Prifti claims. *See* State Department Report.

Thus, even assuming Prifti had established past persecution, he has not established a well-founded fear of future persecution. Accordingly, we uphold the IJ's holding to this effect.

C.    **Due Process**

Though there is no constitutional right to asylum, an alien in removal proceedings is entitled to due process. *Castellano-Chacon v. INS*, 341 F.3d 533, 553 (6th Cir. 2003). Due process requires the alien be afforded a full and fair hearing; however, an IJ has broad discretion in how he conducts that hearing. *Id.* (citing *Mikhailevitch*, 146 F.3d at 391). To be fundamentally unfair, "a defect in the removal proceedings 'must have been such as might have led to a denial of justice.'" *Huicochea-Gomez v. INS*, 237 F.3d 696, 699 (6th Cir. 2001) (quoting *Ramirez v. INS*, 550 F.2d 560, 563 (9th Cir.

1977)).  The alien must also demonstrate prejudice to establish a due process violation.  *Warner v. Ashcroft*, 381 F.3d 534, 539 (6th Cir. 2004).  "Therefore, reviewing an alleged due process violation is a two-step inquiry: first, whether there was a defect in the removal proceeding; and second, whether the alien was prejudiced because of it."  *Ndrecaj*, 522 F.3d at 673 (quoting *Vasha v. Gonzales*, 410 F.3d 863, 872 (6th Cir. 2005)).

Here, Prifti had several years to prepare, perfect, and iron out any inconsistencies in his asylum claims.  Over seven years passed from the initial notice of removal in 1998 to the hearing in January 2006; during that time, Prifti received several continuances and changes of venue.  At the hearing itself, Prifti was able to tell his side of the story during direct questioning from his lawyer, questioning by the IJ, and cross-examination by the Government.  While he takes issue with the tone of the IJ's comments or manner in which the IJ conducted the hearing, the IJ did give Prifti an opportunity to tell his side of the story, and portray events in the light most favorable to him.  It is thus difficult for him to argue he was not afforded an opportunity for a fair hearing.

Prifti argues because the IJ did not recess the hearing until Prifti's counsel interjected, he committed a due process violation by ignoring the severity of Prifti's medical condition.  However, Prifti cites no authority holding a judge must immediately recess a proceeding when a witness's medical condition becomes an issue.  Rather, we find this is a matter of administration committed to the IJ's discretion, *Castellano-Chacon*, 341 F.3d at 553, particularly since the IJ did eventually allow Prifti a recess.  Moreover, the hearing was not continued again until April 2006.  Given this, we cannot conclude Prifti was prejudiced as a result of the sudden onset of his medical condition.

Prifti argues several of the IJ's comments indicated his bias against Prifti and made a fair hearing impossible.  Prifti points specifically to the IJ's repeated references to the case as a

"continuing saga"; his comment to Prifti, "Sir, you think you could have dressed a little more coolly"; his perception that Prifti's attire, a warm-up suit, led to his illness; and the IJ's conclusion Prifti had "obviously lied" about key parts of his testimony. The Government responds that even if the IJ's conduct was "not the most compassionate to Mr. Prifti's medical condition," it was within his broad discretion to conduct the hearing.

"A neutral judge is one of the most basic due process protections." *Reyes-Melendez v. INS*, 342 F.3d 1001, 1006 (9th Cir. 2003). However, even an IJ who makes "brusque" and "sarcastic" remarks to applicants can be neutral, so long as he "does not reveal an underlying bias in favor of the Government." *Hassan v. Gonzales*, 403 F.3d 429, 436–37 (6th Cir. 2005). Here, even if the IJ's comments were brusque, and even if the IJ stated Prifti "obviously lied," Prifti still received the opportunity to testify on his own behalf and submit exhibits, and the IJ's comments did not reveal a bias toward the Government. The IJ's comments about Prifti's attire and medical condition were, at worst, not tactful in or germane to a hearing regarding Prifti's asylum application. However, they could also be viewed as the IJ's suggesting how Prifti could dress himself so the hearing could progress more efficiently. This, of course, is squarely covered by the broad discretion the IJ enjoyed in conducting the hearing, and does not evince bias in the Government's favor. The IJ's comments regarding the validity of Prifti's claim similarly do not violate due process. *Compare id.* Accordingly, we cannot conclude the IJ committed a due process violation which rendered the hearing fundamentally unfair.

D.     **Withholding of Removal and Relief Under the CAT**

In addition to his asylum petition, Prifti also requested withholding of statutory removal and withholding under the CAT. "When an applicant 'fail[s] to meet the statutory eligibility requirements

for asylum, the record necessarily supports the finding that [the applicant does] not meet the more stringent standard of a clear probability of persecution required for withholding of [removal].'" *Berri v. Gonzales*, 468 F.3d 390, 397 (6th Cir. 2006) (quoting *Allabani v. Gonzales*, 402 F.3d 668, 675 (6th Cir. 2005)). For withholding under the CAT, an applicant need not show torture on one of the five statutory grounds, but rather must meet the regulatory definition of torture in 8 C.F.R. § 1208.18(a)(1). 468 F.3d at 397–98. Further, the applicant has the burden of proof to show it is more likely than not that he will be tortured if removed to the proposed country of removal. 8 C.F.R. § 1208.16(c)(2). "In deciding whether torture is more likely than not to occur upon the applicant's return to the country, we 'consider the possibility of future torture, including any evidence of past torture inflicted upon the applicant and evidence that the applicant is not likely to be tortured in another area of the country of removal.'" 468 F.3d at 398 (quoting *Ali v. Reno*, 237 F.3d 591, 596–97 (6th Cir. 2001)).

We are mindful that in some cases, an applicant can succeed on a petition for withholding under the CAT even if his asylum claim is unsuccessful. For example, the applicant could fail to establish any of the five statutory grounds, but still present evidence which met the regulatory definition of torture. Prifti, however, has not presented such evidence. At most, Prifti gave an inconsistent account of one beating where he was left unconscious at the side of the road, which may or may not have been at the hands of Albanian secret police forces. He has not alleged specific threats on his life which would take place if he returned to Albania, nor has he alleged other incidents which could be construed as torture under the regulatory definition. We accordingly conclude that, because he has not satisfied his burden of proof, Prifti has met the criteria neither for withholding of statutory removal nor for withholding under the CAT.

-11-

## IV.  CONCLUSION

Prifti did not provide credible testimony to support a claim for asylum, withholding of statutory removal, or withholding under the CAT.  Furthermore, the IJ did not violate Prifti's due process rights in his removal hearing.  For these reasons, we **AFFIRM** the BIA opinion upholding the IJ's decision.