**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name:  17a0207n.06**

**No. 15-3245**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Apr 07, 2017
DEBORAH S. HUNT, Clerk

DOMINGO AJANEL-GONZALEZ,                )
                                        )
        Petitioner,                     )
                                        )       ON PETITION FOR REVIEW
v.                                      )       FROM THE UNITED STATES
                                        )       BOARD OF IMMIGRATION
JEFF B. SESSIONS, Attorney General,     )       APPEALS
                                        )
        Respondent.                     )
                                        )

**BEFORE:  DAUGHTREY, MOORE, and GIBBONS, Circuit Judges.**

**JULIA SMITH GIBBONS, Circuit Judge.**  Domingo Ajanel-Gonzalez, a Guatemalan native and citizen, seeks review of a Board of Immigration Appeals (the Board) decision denying his application for asylum, withholding of removal, and relief under the Convention Against Torture (CAT).  Because Ajanel-Gonzalez is not eligible for such relief and because he received due process before the immigration judge, we deny his petition.

I.

Domingo Ajanel-Gonzalez is a native and citizen of Guatemala who first came to the United States in January 2001.  In July 2008, he received a Notice to Appear, asserting that he was subject to removal under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1182, as an alien present in the United States who had not been admitted or paroled.  Ajanel-Gonzalez conceded removability, but sought asylum, withholding of removal, and relief under the CAT, or, alternatively, voluntary departure.

At a September 2012 hearing, Ajanel-Gonzalez identified his race (Mayan), nationality (Guatemalan), political opinion ("adverse to joining gangs"), and membership in a particular social group ("[y]oung men who are opposed to joining gangs and are in danger or attacked as a consequence"), as his grounds for relief. AR 112–14. As his attorney, Forhard Sethna, explained these grounds, the immigration judge instructed Sethna not to "argue [his] case" because the judge was asking only that Sethna "identify the various protected characteristics under which [Ajanel-Gonzalez] was claiming asylum."[1] AR 113. When Sethna continued to expand on his responses, the judge cut him off. And in response to the identified social group, the judge stated, "Pretty much an *S-E-G-* particular group, yes?"[2] AR 114.

At the hearing, Ajanel-Gonzalez told the judge that he was born in Aldea Chex, Guatemala in 1974 and that he identified as a member of the Mayan race. He left Guatemala in September 2000 and traveled to Mexico, where he lived until he came to the United States in January 2001. Sethna then asked Ajanel-Gonzalez about his children, specifically those living in the United States. The judge interrupted Sethna, stating that such testimony would not help to decide the case and instructing counsel to move on. When asked later about his family, Ajanel-Gonzalez testified that he had several children and two sisters still living in Guatemala.

Ajanel-Gonzalez testified that he had lived in Ohio for the past five years and was employed by the Gerber Company. When Sethna asked additional questions about his employment, the government objected. The judge sustained the objection despite Sethna's explanation that employment was relevant to his client's credibility.

In his testimony, Ajanel-Gonzalez identified two incidents that he believed constituted past persecution. First, he stated that his father was killed by rebel fighters during a civil war

---

[1] These exchanges between Sethna and the judge form the basis of Ajanel-Gonzalez's due process claim.
[2] We interpret this as a reference to *Matter of S-E-G-* 24 I. & N. Dec. 579 (B.I.A. 2008), in which the Board refused to recognize the proposed social group of those opposed to gangs.

when Ajanel-Gonzalez was eight years old.  This occurred while his father was protecting their village as a member of a civil-defense force.   Second, Ajanel-Gonzalez testified about an incident in September 2000 where he was threatened by the Kichechol—a Guatemalan gang.  He claimed that gang members approached him, asked him for money, and threatened him with a knife, but that he was able to get away safely and was not injured during the encounter.  He did not believe that the police had acted in response to his report about this incident.  It was shortly thereafter that Ajanel-Gonzalez left Guatemala.

Ajanel-Gonzalez proceeded to testify that he was scared of being tortured should he return to Guatemala because the gangs are larger than when he left.  He believed that he would be kidnapped or killed under the mistaken assumption that living in the United States had made him wealthy.  He indicated that these beliefs stemmed, in part, from what his relatives living in Guatemala had told him about gang activity in his village.  He also testified that his oldest son in Guatemala was being recruited by gang members and had been asked for money because the gang members believed that Ajanel-Gonzalez was wealthy from living in the United States.

Finally, Ajanel-Gonzalez discussed his delay in filing an application for asylum.  He stated that he was not aware of the application and could not read or write in Spanish or English when he arrived in the United States, making it difficult for him to secure legal assistance.  At this point, Sethna again asked Ajanel-Gonzalez about his employment.  When the government objected, Sethna again argued that he was attempting to buttress Ajanel-Gonzalez's character and credibility.  The judge again found that the questions were not relevant, stating:

> Well, I think we're talking about nondiscretionary forms of relief here because I don't think the client has shown any exception to the one-year filing deadline.  So we're talking about nondiscretionary forms of relief, so I agree, that's not relevant.  Sustained.

AR 142.  Shortly thereafter, Ajanel-Gonzalez rested his case.

After hearing argument from both parties, the immigration judge denied all relief. The judge found Ajanel-Gonzalez to be a credible witness. With respect to Ajanel-Gonzalez's specific requests for relief, the judge found that his asylum claim was time barred because he did not file within one year of his arrival and because there was no legal support for the proposition that Ajanel-Gonzalez could show extraordinary circumstances because of a language barrier.

The judge also held that even if Ajanel-Gonzalez's application was timely, his claim still failed because he had not established past persecution or a well-founded fear of future persecution. The judge held that the death of his father did not constitute persecution. And even if it did, the judge recognized that there was no nexus between his father's death and Ajanel-Gonzalez's alleged protected characteristics. The judge also held that the attempted robbery was not past persecution. Alternatively, the judge found that there was no evidence to show a nexus between the robbery and one of Ajanel-Gonzalez's claimed protected characteristics. With respect to future persecution, the judge found no evidence to support a well-founded fear of persecution on account of Ajanel-Gonzalez's Mayan ancestry, Guatemalan citizenship, political opinion, or the proposed social group of "young men who are opposed to joining gangs." AR 58–59. Additionally, the judge recognized that although Ajanel-Gonzalez testified about a fear of persecution on account of others perceiving him to be wealthy, such a group was neither identified nor legally cognizable. For these same reasons, the judge held that Ajanel-Gonzalez was not eligible for withholding of removal.

Finally, the judge rejected Ajanel-Gonzalez's request for CAT relief because Ajanel-Gonzalez had not provided any evidence that he would be tortured by, or at the acquiescence of, a public official in Guatemala. The judge noted that Ajanel-Gonzalez's fear of being killed "seem[ed] to be primarily speculation." AR 54.

Ajanel-Gonzalez appealed to the Board. He first argued that his language barrier, age, education, and difficulty acclimating to the United States constituted "exceptional circumstances" that excused his delay in filing an asylum application. Next, he argued that the immigration judge "pre-determined" his asylum claim before he had finished testifying and that the judge cut off counsel more than fifteen times during his testimony. As to his CAT claim, he argued that the judge had discounted his claim of police inaction, erred by dismissing his fear as speculative, and failed to recognize that the Guatemalan government was complicit in torture by private entities. With respect to withholding of removal, Ajanel-Gonzalez argued that he had satisfied the persecution standard "based on a combination of factors."

The Board affirmed. It agreed that Ajanel-Gonzalez's asylum application was not timely and that he had not established an exception to the deadline on account of "profound language barriers." The Board distinguished *Matter of Y-C-*, 23 I. & N. Dec. 286 (B.I.A. 2002), noting that Ajanel-Gonzalez was significantly older and had waited much longer to file his application.

Alternatively, the Board found that Ajanel-Gonzalez did not qualify for asylum because he had not suffered past persecution and lacked a well-founded fear of future persecution. With respect to past persecution, the Board held that his father's death did not qualify because Ajanel-Gonzalez had not been threatened or harmed. It also found that the attempted robbery did not qualify because Ajanel-Gonzalez was not physically harmed and had escaped. The Board refused to find a likelihood of future persecution because his family had lived in Guatemala without suffering significant harm, the guerillas had disbanded, and a fear of widespread violence was not enough to establish future persecution. Because the Board found that Ajanel-Gonzalez did not qualify for asylum, it also concluded that he could not meet the higher standard for withholding of removal. And the Board rejected his CAT claim, agreeing that he had not

shown that it was more likely than not that he would be tortured by the government, or at its acquiescence, upon his return.

Finally, the Board rejected Ajanel-Gonzalez's due process arguments, finding no support in the record for his claim that the immigration judge had predetermined his asylum claim. The Board interpreted the judge's statement as an "honest assessment of the state of the record" and recognized that Ajanel-Gonzalez could have presented further evidence to support his claim. The Board found that the judge's interruptions "were not excessive and were intended to focus questioning on issues relevant to [Ajanel-Gonzalez's] claim for asylum." And because the judge considered the asylum claim on the merits, the Board found that Ajanel-Gonzalez could not show prejudice by the judge's comments or conduct.

Ajanel-Gonzalez filed a timely petition for review.

II.

Where the Board reviews an immigration judge's decision and issues a separate opinion, we treat that opinion as a final agency determination. *Sanchez-Robles v. Lynch*, 808 F.3d 688, 691–92 (6th Cir. 2015) (citation omitted). In such cases, we review the immigration judge's decision to the extent the Board adopted the judge's reasoning. *Id.* at 692.

We consider allegations of due process violations during removal hearings *de novo*. *Hassan v. Gonzales*, 403 F.3d 429, 435 (6th Cir. 2005). We review other questions of law *de novo*, but grant "substantial deference" to the Board's interpretation of the INA and its accompanying regulations. *Morgan v. Keisler*, 507 F.3d 1053, 1057 (6th Cir. 2007). Findings of fact, including credibility determinations, are reviewed for substantial-evidence and are "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Marouf v. Lynch*, 811 F.3d 174, 180 (6th Cir. 2016) (quoting 8 U.S.C. § 1252(b)(4)(B)).

III.

Under the INA, an asylum applicant must "demonstrate[] by clear and convincing evidence that the application has been filed within 1 year after the date of the alien's arrival in the United States." 8 U.S.C. § 1158(a)(2)(B). An exception exists if an applicant establishes "extraordinary circumstances relating to the delay in filing an application." *Id.* § 1158(a)(2)(D). But "[n]o court shall have jurisdiction to review any determination of the Attorney General under [§ 1158(a)(2)]." *Id.* § 1158(a)(3). This provision bars our review of "discretionary or factual questions" but not "constitutional claims or matters of statutory construction." *Vincent v. Holder*, 632 F.3d 351, 353 (6th Cir. 2011). The determination of extraordinary circumstances under § 1158(a)(2) is a discretionary question. *Fisenko v. Lynch*, 826 F.3d 287, 290 (6th Cir. 2016) (citing *Vincent*, 632 F.3d at 353).

Ajanel-Gonzalez did not apply for asylum until eight years after arriving in the United States and the Board found that he failed to show extraordinary circumstances. Ajanel-Gonzalez now argues that the Board failed to "recognize and acknowledge the exceptional circumstances" that prevented him from filing a timely application. Because we lack jurisdiction to review such a discretionary decision, *see Fisenko*, 826 F.3d at 293, we cannot consider his asylum claim.

IV.

To qualify for withholding of removal, Ajanel-Gonzalez must show that it is more likely than not that he will be persecuted in Guatemala "on account of race, religion, nationality, membership in a particular social group, or political opinion." *Umana-Ramos v. Holder*, 724 F.3d 667, 674 (6th Cir. 2013) (quoting 8 U.S.C. § 1231(b)(3)(A)); *see also Marouf*, 811 F.3d at 179. If he can show past persecution on account of a protected ground, we presume there will be future persecution. 8 C.F.R. § 208.16(b)(1)(i). Without past persecution, however, Ajanel-

Gonzalez must show that it is more likely than not that his life or freedom will be threatened upon return because of a protected ground. *Id.* § 208.16(b)(2).

Persecution is "the infliction of harm or suffering . . . to overcome a characteristic of the victim." *Khalili v. Holder*, 557 F.3d 429, 436 (6th Cir. 2009) (citation omitted). It "requires more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty." *Mikhailevitch v. INS*, 146 F.3d 384, 389 (6th Cir. 1998). Actions that "cross the line from harassment to persecution include: detention, arrest, interrogation, prosecution, imprisonment, illegal searches, confiscation of property, surveillance, beatings, or torture." *Haider v. Holder*, 595 F.3d 276, 286–87 (6th Cir. 2010) (citation omitted).

The Board concluded that Ajanel-Gonzalez's withholding-of-removal claim necessarily failed because he had not "demonstrate[d] past persecution or a well-founded fear of [future] persecution in Guatemala." AR 4. On appeal, Ajanel-Gonzalez alleges persecution only on account of the social group including those "opposed to gangs." He does not challenge the denial of his previously-claimed grounds of race, nationality, or political opinion. Accordingly, we treat them as waived. *Shkabari v. Gonzales*, 427 F.3d 324, 327 n.1 (6th Cir. 2005).

Ajanel-Gonzalez asserts three specific claims of persecution: (1) past persecution on account of his father's death; (2) past persecution on account of a single incident of attempted robbery by members of a local gang; and (3) future persecution because of what will be "imposed on him and his family members in Guatemala by the gangs that operate[] with impunity." The Board was correct to find that none of these claims constituted persecution.

Although tragic, Ajanel-Gonzalez's experience with his father's death did not constitute past persecution. First, there is no nexus between his father's death at the hands of guerilla

fighters and Ajanel-Gonzalez's opposition to gangs. If anything, Ajanel-Gonzalez's protected ground would have to be an imputed political opinion. He has not made this argument on appeal and there is no evidence in the record to this effect. Second, there is substantial evidence and legal precedent to support the Board's finding that Anjanel-Gonzalez was neither harmed nor threatened by the guerillas. Ajanel-Gonzalez did not testify as to any physical harm or harassment that he had suffered. And the death of a family member at the hands of guerilla fighters, without more, does not establish persecution. *See Zacarias v. Gonzales*, 232 F. App'x 458, 462–63 (6th Cir. 2007); *see also Akhtar v. Gonzales*, 406 F.3d 399, 405–06 (6th Cir. 2005).

The Board was also correct to hold that the attempted robbery did not constitute past persecution. A single attack or robbery by gang members does not amount to persecution. *See Cano-Huerta v. Holder*, 568 F. App'x 371, 373 (6th Cir. 2014) (per curiam). Ajanel-Gonzalez was not harmed by his attackers and he was able to escape, making the attempted robbery nothing more than a threat. This, alone, precludes the conclusion that the robbery constituted persecution. *See Mikhailevitch*, 146 F.3d at 389; *see also Thapa v. Holder*, 572 F. App'x 314, 321 (6th Cir. 2014) (home and office invasions where neither the petitioner nor his family are harmed do not constitute persecution); *Moran-Quinteros v. Holder*, 352 F. App'x 974, 978 (6th Cir. 2009) ("[U]nfulfilled threats—without physical harm—do not constitute persecution.").

Additionally, there is substantial evidence to support the Board's finding that Ajanel-Gonzalez did not establish a well-founded fear of future persecution from gang members. There are several problems with his assertion of future persecution by gang members. First, there is no testimony in the record to indicate that either Ajanel-Gonzalez or his son were subject to anything more than harassment by gangs. There is no evidence that he has been or will be harmed. *See Mikhailevitch*, 146 F.3d at 389. Second, his other family members have been able

to live in Guatemala without suffering and a general fear of violence cannot establish a claim for persecution. *Umana-Ramos*, 724 F.3d at 670. Third, a generalized opposition to gangs is not a cognizable social group. *Id.* at 673–74. Finally, even when we consider Ajanel-Gonzalez's claims of persecution in the aggregate, there is no basis on which to grant him relief. He has failed to tie any fear of future harm to a protected characteristic that we have recognized.

Accordingly, we find that the Board's decision was consistent with our prior decisions and that there was substantial evidence to support its conclusion.

V.

Relief under the CAT is available if Ajanel-Gonzalez can establish that it is more likely than not that he would be tortured if returned to Guatemala. 8 C.F.R. § 208.16(c)(2); *see Bi Qing Zheng v. Lynch*, 819 F.3d 287, 294 (6th Cir. 2016). This requires a "*particularized* threat of torture." *Cruz-Samayoa v. Holder*, 607 F.3d 1145, 1155 (6th Cir. 2010). Generalized allegations, alone, are not enough. *Melchor-Reyes v. Lynch*, 645 F. App'x 381, 386 (6th Cir. 2016) (citing *Cruz-Samayoa*, 607 F.3d at 1156).

Torture "entail[s] the intentional infliction of severe mental or physical pain upon an individual 'by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.'" *Alhaj v. Holder*, 576 F.3d 533, 539 (6th Cir. 2009) (quoting 8 C.F.R. § 208.18(a)(1)). "The CAT does not afford protection to torturous acts inflicted by wholly private actors." *Zaldana Menijar v. Lynch*, 812 F.3d 491, 501 (6th Cir. 2015). In evaluating a claim for relief under the CAT, an adjudicator must consider:

> [A]ll evidence relevant to the possibility of future torture . . . , including, but not limited to: (i) Evidence of past torture inflicted upon the applicant; (ii) Evidence that the applicant could relocate to a part of the country of removal where he or she is not likely to be tortured; (iii) Evidence of gross, flagrant or mass violations of human rights within the country of removal, where applicable; and (iv) Other relevant information regarding conditions in the country of removal.

8 C.F.R. § 208.16(c)(3); *see Mapouya v. Gonzales*, 487 F.3d 396, 414–15 (6th Cir. 2007).

The immigration judge concluded that Ajanel-Gonzalez "presented literally no evidence to prove that it is more likely than not that he would be subjected to torture in Guatemala." AR 81. The Board affirmed on the basis that Ajanel-Gonzalez had not met his burden to qualify for CAT relief. On appeal, Ajanel-Gonzalez asserts that it was error to dismiss his fears as speculative given the testimony that he and his son had been threatened by gang members. He also argues that the record establishes that the Guatemalan government is willfully blind to gang violence and the "plight of the . . . Mayan people."

There is substantial evidence to support the Board's decision. When asked why he feared torture in Guatemala, Ajanel-Gonzalez testified that "[g]ang members are really bigger now," and that "they would think I have a lot of money, so they're going to kidnap me, kill me and kill my entire family." AR 134. As to acquiescence, he testified only that he did not believe that the police had responded to his report of attempted robbery and reports on country conditions in Guatemala. For the same reasons his past experiences in Guatemala do not constitute persecution, *see* Part IV, *supra*, he has not established any evidence of past torture. His fear of gang violence upon returning to Guatemala sounds in broad, general terms, not the particularized threat that this court requires. *See Cruz-Samayoa*, 607 F.3d at 1155–56. Accordingly, substantial evidence supports the Board's finding that Ajanel-Gonzalez did not establish a sufficient likelihood of torture upon his return to Guatemala to qualify for CAT relief.

## VI.

"Fifth Amendment guarantees of due process extend to aliens in deportation proceedings, entitling them to a full and fair hearing." *Huicochea-Gomez v. INS*, 237 F.3d 696, 699 (6th Cir. 2001). We require an alien to establish both "error and substantial prejudice" to establish a due

process violation. *Garza-Moreno v. Gonzales*, 489 F.3d 239, 241 (6th Cir. 2007) (citation omitted).

Error occurs when "the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting his case." *Hassan v. Gonzales*, 403 F.3d 429, 436 (6th Cir. 2005) (quoting *Ladha v. INS*, 215 F.3d 889, 904 (9th Cir. 2000)). Although the immigration judge is "afforded broad discretion to control the manner of interrogation in order to ascertain the truth," *Hassan*, 403 F.3d at 436 (quoting *Mikhailevitch*, 146 F.3d at 391), an alien is "entitled to an unbiased arbiter who has not prejudged [his] claims," *Bi Qing Zheng*, 819 F.3d at 297 (quoting *Ahmed v. Gonzales*, 398 F.3d 722, 725 (6th Cir. 2005)). Due process is violated when the judge acts not as a "neutral fact-finder interested in hearing the [alien]'s evidence" but "as a partisan adjudicator seeking to intimidate the [alien] and his counsel." *Hassan*, 403 F.3d at 436 (second alteration in original) (quoting *Reyes-Melendez v. INS*, 342 F.3d 1001, 1007 (9th Cir. 2003)).

However, we have previously allowed an immigration judge to use "brusque," "inartful," or "terse" language, *Hassan*, 403 F.3d at 436; *Mackie v. Gonzales*, 166 F. App'x 815, 817 (6th Cir. 2006); *Prifti v. Mukasey*, 307 F. App'x 900, 906 (6th Cir. 2009), to express reasonable frustration, skepticism, or sarcasm, *Aichai Hu v. Holder*, 335 F. App'x 510, 515–16 (6th Cir. 2009); *Pepaj v. Mukasey*, 307 F. App'x 891, 897 (6th Cir. 2009), and to "repeatedly [take] over the questioning" of a witness, *Martini v. Mukasey*, 314 F. App'x 819, 824 (6th Cir. 2008); *see also* 8 U.S.C. § 1229a(b)(1) (providing immigration judges with the authority to "interrogate, examine, and cross-examine the alien and any witnesses").

Prejudice requires an alien to show that the violation "led to a substantially different outcome from that which would have occurred in the absence of these violations." *Abdallahi v.*

*Holder*, 690 F.3d 467, 472 (6th Cir. 2012) (citation omitted). We "need not address the merits of a claim if there is no demonstration of prejudice." *Graham v. Mukasey*, 519 F.3d 546, 549 (6th Cir. 2008).

A.

Ajanel-Gonzalez first argues that his due process rights were violated because the judge "predetermined" his asylum claim as illustrated by the following exchange:

> MR. SETHNA TO RESPONDENT
> Q.    Now you said that you work at Gerber Poultry, correct?
> A.    Yes.
> Q.    Now, how do you get paid by Gerber Poultry?
>
> [GOVERNMENT COUNSEL] TO JUDGE
>    Objection, relevance.
>
> JUDGE TO MR. SETHNA
>    Mr. Sethna?
>
> MR. SETHNA TO JUDGE
>    Your Honor, it's important to understand how he's getting paid and whether he's paying taxes and so on. I can get all of his burden to show he has good moral character, that he's got some credibility and that, of course, factors in the Court's decision.
>
> JUDGE TO MR. SETHNA
>    Well, I think we're talking about nondiscretionary forms of relief here because I don't think the client has shown any exception to the one-year filing deadline. So we're talking about nondiscretionary forms of relief, so I agree, that's not relevant. Sustained.
>
> MR. SETHNA TO JUDGE
>    Then Your Honor, I have no further questions at this time.

AR 142. Ajanel-Gonzalez argues that the judge "decided that asylum relief was definitively off the table without considering any of the testimony that would have followed" and was acting with "haste, bias . . . and poor judgment" in excluding evidence of extraordinary circumstances to excuse the one-year deadline "at such an early and premature point in the direct examination."

This exchange, however, occurred after Sethna had elicited testimony as to why Ajanel-Gonzalez had not filed a timely asylum application. To the extent that the judge was commenting on the strength of the claim, it was within his discretion to express skepticism based on that testimony. And the judge's comment—in the course of ruling on an unrelated objection about the relevance of credibility and moral-character evidence—certainly did not prohibit further testimony as to extraordinary circumstances.

Even if there was error, Ajanel-Gonzalez has not suggested any prejudice other than his claim that the judge's statement chilled counsel's questions and his responses. Ajanel-Gonzalez had already had an opportunity to testify about the facts underlying his extraordinary-circumstances argument. This testimony was referenced by both the immigration judge and the Board in determining whether Ajanel-Gonzalez had established such circumstances. It is unclear what other testimony he would have offered to change this result. The burden is on Ajanel-Gonzalez to establish prejudice and he has not suggested any additional testimony that he would have given absent the judge's comment.

Furthermore, the Board rejected Ajanel-Gonzalez's asylum claim on the merits because he failed to establish persecution. *See* Part IV, *supra*. The exchange at issue here came well after Ajanel-Gonzalez's testimony about alleged persecution. And because testimony related to persecution is also relevant to withholding of removal—a form of nondiscretionary relief—the judge's comments cannot be construed as chilling or preventing additional testimony as to persecution which would support an asylum claim. This precludes any finding of prejudice on Ajanel-Gonzalez's prejudgment claim.

B.

Ajanel-Gonzalez also argues that the immigration judge "demonstrated significant, egregious, and prejudicial judicial bias" that prevented him from receiving a full and fair hearing. He points to an exchange between counsel and the judge prior to his testimony about the grounds on which he was seeking relief. He also suggests that comments by the judge during his testimony indicate bias, such as questions to counsel about how testimony would help the judge to decide the asylum claim, instructions for counsel to move on to other topics, and the comment, "You ask him the questions—the questions you want to ask, if they're not going to help me decide the case, I'll let you know." AR 123. He claims that this constituted "restrictive fact-finding," chilled his attorney's questions, chilled his testimony, and created a biased environment.

A terse or frustrated exchange, however, does not constitute bias so long as it "does not reveal an underlying bias in favor of the Government." *Hassan*, 403 F.3d at 436–37. Nothing the judge said indicates that he was favoring the government over Ajanel-Gonzalez. Instead, his comments appear to be focused on moving the hearing along and avoiding testimony not relevant to the decision. The judge's questions directly to Ajanel-Gonzalez appear to be focused on clarifying the testimony, and the judge did not hold back from restricting the government's questioning when it was not relevant.

Additionally, the transcript indicates that the judge's exchange with counsel at the outset of the hearing did not prohibit counsel from providing additional, independent reasons as grounds for relief. It only limited the extent to which the judge would accept argument on one particular reason prior to Ajanel-Gonzalez's testimony. The fact that Sethna failed to identify imputed political opinion as a basis for relief at the outset and was later precluded from arguing

it in summation, then, is not an error attributable to the judge. And to the extent Ajanel-Gonzalez feels that his social group of "young men who objected to joining gangs and were threatened" was summarily dismissed when the judge referred to it as "[p]retty much an *S-E-G-*particular group," the judge was referring precedent binding on his decision. AR 114. Sethna also immediately indicated his disagreement and intent to distinguish that decision through testimony. Given the broad discretion that this court allows immigration judges in managing proceedings, we cannot say that the conduct here arises to a level at which Ajanel-Gonzalez did not receive a full and fair hearing.

Alternatively, Ajanel-Gonzalez has not suggested how he was prejudiced as a result of these alleged improprieties. He received a full merits-based review by both the immigration judge and the Board; he has not identified how the judge's instructions precluded testimony that he would have otherwise added to the record; and even if Sethna was precluded from arguing imputed political opinion as a protected ground because he failed to identify it at the outset, Ajanel-Gonzalez does not attempt to argue how doing so would have changed the outcome of his asylum or withholding of removal claim.

* * *

Without a basis to establish error or prejudice as to either due process claim, we conclude that the Board was correct to find that Ajanel-Gonzalez was afforded sufficient due process during his removal proceedings.

## VII.

For the foregoing reasons, we deny the petition for review.