**NOT RECOMMENDED FOR PUBLICATION**
File Name: 18a0525n.06
**No. 17-4269**

| | | |
|---|---|---|
| **UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT** | | **FILED** Oct 22, 2018 DEBORAH S. HUNT, Clerk |
| SARA TOMAS RIOS-ZAMORA, | ) ) | |
| Petitioner, | ) ) | ON PETITION FOR REVIEW |
| v. | ) ) | FROM THE UNITED STATES BOARD OF IMMIGRATION |
| JEFFERSON B. SESSIONS, III, Attorney General, | ) ) | APPEALS |
| Respondent. | ) ) ) | OPINION |

**BEFORE:** MERRITT, DAUGHTREY, and STRANCH, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.** Sara Rios-Zamora and her daughter left Honduras in 2014 after being robbed at gunpoint. The immigration judge denied her application for asylum, withholding of removal, and relief under the Convention Against Torture; the Board of Immigration Appeals (BIA) affirmed. Though we have no doubt the robbery was traumatic for both Rios-Zamora and her daughter, we are bound by precedent to conclude that the robbery did not amount to persecution on account of a protected characteristic and so **DENY** the petition for review.

## I. BACKGROUND

Before she left Honduras, Rios-Zamora managed a small convenience store with her oldest son. The store, which was located in the two-room house where the family lived, stocked a variety of items, such as propane tanks, water bottles, and food. One morning, a little after 5:30 a.m., four men and one woman entered the store. The intruders, whom Rios-Zamora believed to be gang

members, stopped Rios-Zamora at the door and then entered the rooms where the children were sleeping. They put guns to the children's heads and tied up the family members. Watching the robbers move through the house, Rios-Zamora feared for her life and the lives of her children. The robbers took all the cash they could find, which totaled approximately $2,000[1] and represented the sale proceeds for the day, as well as other items such as cell phones. As the robbers were leaving, they threatened to return and kill the family if they reported the incident to the police. Rios-Zamora never saw them again.

Rios-Zamora was terrified and unwilling to remain in that house. The very same day, she and her daughter moved to her mother's home. But there, too, she felt unsafe, fearing the gangs that she testified could be found on "every corner" of that neighborhood. So Rios-Zamora and her daughter left Honduras to seek safety in the United States. But as soon as they crossed the southern border, they were put in removal proceedings.

Rios-Zamora applied for asylum and withholding of removal under both the Immigration and Nationality Act (INA) and the Convention Against Torture, listing her daughter as a derivative beneficiary on each application. The immigration judge denied her applications and ordered that Rios-Zamora and her daughter be removed. The BIA affirmed, holding that (1) Rios-Zamora did not "suffer[] harm amounting to past persecution," (2) her proposed social groups did not have "the requisite distinction within Honduran society to qualify" as a basis for asylum under the INA, (3) she did not show that the individuals who committed the robbery "were motivated by her membership in a particular social group," and (4) the future harm she feared was general crime, which also did not amount to persecution on account of a protected ground. Rios-Zamora petitions this court for review.

---

[1] It is not clear from the record if this figure is in U.S. dollars or Honduran lempira.

## II.   ANALYSIS

We review the BIA's legal conclusions de novo, *Stserba v. Holder*, 646 F.3d 964, 971 (6th Cir. 2011), but "administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary."  8 U.S.C. § 1252(b)(4)(B).

To obtain asylum, Rios-Zamora must show that she qualifies as a refugee under the INA, meaning that she "is unable or unwilling to return to" her home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion."  8 U.S.C. § 1101(a)(42).   A showing of past persecution gives rise to a rebuttable presumption of a well-founded fear of future persecution. 8 C.F.R. § 1208.13(b)(1).   "Withholding of removal claims are analyzed under the same framework, except that the 'alien must show a "clear probability" of persecution.'" *Abdurakhmanov v. Holder*, 735 F.3d 341, 345 (6th Cir. 2012) (quoting *Dugboe v. Holder*, 644 F.3d 462, 472 (6th Cir. 2011).

Persecution is an "ambiguous" term that is not defined in the INA or the accompanying regulations.  *Stserba*, 646 F.3d at 972.  "To determine whether past persecution occurred, we evaluate the overall context of the applicant's situation and view the evidence in the aggregate." *Kukalo v. Holder*, 744 F.3d 395, 400 (6th Cir. 2011).  Typical examples of "actions that might cross the line from harassment to persecution include: detention, arrest, interrogation, prosecution, imprisonment, illegal searches, confiscation of property, surveillance, beatings, or torture." *Haider v. Holder*, 595 F.3d 276, 286–87 (6th Cir. 2010) (quoting *Zacarias v. Gonzales*, 232 F. App'x 458, 462 (6th Cir. 2007)).  As this list demonstrates, "physical harm is not an essential feature of persecution."  *Stserba*, 646 F.3d at 972.  Economic deprivation, for example, can constitute persecution if "the resulting conditions are sufficiently severe."  *Id.* at 976 (quoting *Daneshvar v. Ashcroft*, 355 F.3d 615, 624 n.9 (6th Cir. 2004)).

Persecution must also be "on account of" a protected ground, 8 U.S.C. § 1101(a)(42), which is to say, the protected characteristic must be "at least one central reason" for the persecution, *id.* § 1158(b)(1)(B)(i). To prove this so-called "nexus," a petitioner must show that she was "specifically targeted" based on a protected characteristic, "not merely victimized 'by indiscriminate mistreatment' or 'random crime.'" *Stserba*, 646 F.3d at 972 (quoting *Gilaj v. Gonzales*, 408 F.3d 275, 285 (6th Cir. 2005)).

In this case, the past harm that Rios-Zamora suffered was an armed robbery, which she argues on appeal was motivated by her membership in the particular social group of Honduran business owners.[2] In some circumstances, acts that occur during a robbery—such as physical violence, death threats, and seizing property—can amount to persecution. *See Marouf v. Lynch*, 811 F.3d 174, 189 (6th Cir. 2016) (beating); *Al-Ghorbani v. Holder*, 585 F.3d 980, 998 (6th Cir. 2009) (death threats); *Ouda v. INS*, 324 F.3d 445, 454 (6th Cir. 2003) (confiscation of property). If, however, a robbery is merely an instance of "widespread crime and violence," it does not constitute persecution. *Menijar v. Lynch*, 812 F.3d 491, 501 (6th Cir. 2015). Thus, pointing to a single instance of robbery, even armed robbery, does not in and of itself carry Rios-Zamora's burden. *See Ajanel-Gonzalez v. Sessions*, 685 F. App'x 419, 424–25 (6th Cir. 2017); *Cano-Huerta v. Holder*, 568 F. App'x 371, 373 (6th Cir. 2014). In this case, Rios-Zamora and her family members were not physically injured, the threats were not specific or targeted, and the money stolen represented only a single day's sales.

Moreover, the record supports the immigration judge's conclusion that Rios-Zamora did not demonstrate that she was robbed "on account of" her membership in a protected group.

---

[2] Because we ultimately conclude that the robbery cannot support Rios-Zamora's asylum claim, we need not decide whether the proposed particular social group is properly before us or whether it satisfies the social distinction requirement.

8 U.S.C. § 1101(a)(42). During the hearing, Rios-Zamora's attorney asked her at least four times if she knew or suspected why the robbers targeted her business or if she thought the attack was "just random[]." Rios-Zamora guessed that perhaps her store was targeted because it had a lot of business but agreed that the robbery might have been random. In light of this testimony, we cannot agree that "any reasonable adjudicator would be compelled to conclude" that the robbery was anything other than an instance of generic crime. *Id.* § 1252(b)(4)(B).

That logic also holds for the future persecution that Rios-Zamora fears should she be returned to Honduras: harm "due to the prevalence of gangs in Honduras." Although we have no doubt that Rios-Zamora honestly and legitimately fears gangs, "[g]eneral conditions of rampant gang violence alone are insufficient to support a claim for asylum." *Umaña-Ramos v. Holder*, 724 F.3d 667, 670 (6th Cir. 2013).

Our conclusion on the merits of Rios-Zamora's asylum claim also decides her remaining claims. A petitioner seeking withholding of removal or relief under the Convention Against Torture must show that it is "more likely than not" that she will be persecuted or tortured, respectively, upon return. *See* 8 C.F.R. § 1208.16(b)(2), (c)(2). "Because the withholding of removal standard is higher than that governing asylum, an applicant who fails to establish a well-founded fear of persecution for purposes of establishing asylum is necessarily ineligible for withholding of removal." *Zhao v. Holder*, 569 F.3d 238, 246 n.10 (6th Cir. 2009). Likewise, "[b]ecause the petitioner cannot demonstrate entitlement to a grant of asylum, [s]he also cannot meet the more stringent requirements of the Convention Against Torture." *Kaba v. Mukasey*, 546 F.3d 741, 751 (6th Cir. 2008).

### III.   CONCLUSION

Although we are loath to return a woman and her daughter to a country they fled in fear for their lives, we are bound by established precedent. The petition for review is **DENIED**.